ALFRED J. MATEYKA, Plaintiff-Appellee, v. HERMAN O. SCHROEDER, Defendant (Walter Greathouse *et al.*, Defendants-Appellants).

Fifth District   No. 5—85—0227

Opinion filed February 19, 1987.—Rehearing denied March 24, 1987.

856

Robert P. Hennessey, of Granite City, for appellants Walter Greathouse and Mildred I. Greathouse.

Dailey & Walker, of Granite City, for appellants Otis G. Gosnell, Sandra F. Gosnell, and Kathryn M. Pomeroy.

Earl L. Vuagniaux, of Edwardsville, for appellee.

JUSTICE KASSERMAN delivered the opinion of the court:

Plaintiff, Alfred J. Mateyka, brought this action for the collection of a debt arising out of a real estate transaction. At trial, plaintiff contended that he was entitled to recover from the defendants either on the theory of contract or on the theory of estoppel. After a bench trial, the trial court found that plaintiff could recover either on the theory of contract or estoppel and entered judgment against the defendants jointly and severally in the amount of $18,302.41 principal and $2,506.66 interest. Defendants Walter Greathouse, Mildred I. Greathouse, Otis G. Gosnell, Sandra F. Gosnell, and Kathryn M. Pomeroy have perfected this appeal. Defendant Herman Schroeder is not a party to the appeal.

Defendants' contention on appeal addresses both of plaintiff's theories. With respect to plaintiff's theory of contract, defendants' argument is twofold: first, that the court erred in finding them liable on a contract which they contend contains no promise to pay; and second, that the court erred in finding that an agency existed authorizing defendant Herman Schroeder to bind the defendants personally to pay $34,000 jointly and severally. With respect to plaintiff's theory of estoppel, defendants contend that the plaintiff did not meet his burden of proof in establishing the requisite elements of estoppel. For the reasons stated below, we affirm with respect to all defendants except Kathryn M. Pomeroy.

The transaction at issue in this case involved the sale of approximately 200 acres of farmland in Calhoun County, together with farm equipment located on the real estate. The eight buyers were four men

involved in a real estate business known as Granite City Realty and their wives. The transaction took place in July of 1977 after some months of negotiation between defendant Herman Schroeder and the plaintiff. Plaintiff alleges that it was agreed that Herman Schroeder and the other defendants would purchase the 200-acre tract of land plus the equipment located thereon for the sum of $115,000. Prior to the closing, the plaintiff knew that Herman Schroeder was representing other people in the transaction who were "going in on it with him"; however, he did not know who they were until they signed a lease agreement with him and he signed the warranty deed to the property.

Defendant Herman Schroeder was a real estate broker doing business as Granite City Realty. He failed to appear at the trial and was defaulted and is not a party to this appeal. Defendant Walter Greathouse is a licensed real estate salesman who worked for Herman Schroeder selling real estate from 1975 to 1979. Defendant Otis Gosnell also worked at Granite City Realty as a salesman. Until his death in 1978, Ivon Pomeroy, husband of defendant Kathryn M. Pomeroy, was the office manager of Granite City Realty. Prior to closing the real estate transaction which is the basis of this suit, plaintiff never talked with the Gosnells, Pomeroys, or Greathouses but, rather, dealt solely with Herman Schroeder.

At the time of the closing, the plaintiff received $80,102.50, which represented the difference between the sale price of $115,000 and a second mortgage in the amount of $34,000 and closing costs of $897.50. The purchasers of the property made the down payment by borrowing $83,500 from Madison County Federal Savings and Loan Association. At the time of the closing, plaintiff received a Granite City Realty check for $80,102.50 and was given a lease from the defendants which allowed plaintiff to stay in a trailer on the farm for a period of five years in exchange for mowing and maintaining the property.

The relevant documents at the closing include a warranty deed from plaintiff to the defendants and Norma J. Schroeder and Ivon J. Pomeroy, dated July 5, 1977; a lease agreement from the grantees in the warranty deed back to plaintiff, dated July 1, 1977; and a mortgage on the property from the grantees in the warranty deed to Madison County Federal Savings and Loan Association, securing a loan of $83,500, dated July 5, 1977. The other relevant document, which is the crux of this appeal, is a second mortgage to the plaintiff purportedly signed by the eight buyers and dated July 8, 1977. There was no promissory note with this second mortgage. At trial defendant

Kathryn M. Pomeroy denied signing the second mortgage and the lease, and this testimony was uncontradicted. She further testified that the lease and second mortgage did bear her deceased husband's signature but that the only document that she signed was the mortgage to Madison County Federal.

The second mortgage contained a provision that the sum of $34,000, with interest at the rate of 7% *per annum*, was to be payable each year in the amount of $4,000, to become fully due and payable January 1, 1982. The term of the mortgage was five years. Payments were made to the plaintiff roughly in accordance with this schedule set forth in the second mortgage, although in a slipshod and dilatory manner. Plaintiff received payments for principal and interest totalling $23,028 in four installments on January 4, 1979, August 30, 1979, July 10, 1980, and February 23, 1981. The payments plaintiffs received were made by Herman Schroeder by checks drawn on Granite City Realty. Schroeder was the only person with whom the plaintiff dealt up until the time of the default in payments around January 1, 1982. However, payments were deducted from monthly commissions received by Greathouse and Gosnell from Schroeder's real estate company. As of December 23, 1982, there was due and owing under the second mortgage the sum of $18,302.41.

After the default, plaintiff approached defendant Greathouse on various occasions and had at least two meetings with him, one of which included Herman Schroeder. Defendant Greathouse attempted to put together an arrangement whereby a third party would take over the land and the payments associated with it. Nothing came of these efforts, and Madison County Federal Savings and Loan Association foreclosed on the property. There was not sufficient equity in the land to pay Madison County Federal Savings and Loan Association and then plaintiff on his second mortgage. Apparently the lack of sufficient equity to cover both loans is explained by the fact that the purchase price alleged to have been agreed upon between the parties included $20,000 worth of farming equipment. Herman Schroeder later went through bankruptcy proceedings and was discharged in bankruptcy. Although Schroeder was served with process in the instant case, he failed to appear and was defaulted.

After considering the evidence, the trial court found that the plaintiff agreed to sell and defendants agreed to purchase the real estate in question, along with certain personal property, for $115,000; that the real estate was conveyed to defendants by warranty deed; that the real estate was partially paid for by defendants obtaining a loan for $83,500 from Madison County Federal Savings and Loan in

which the land was mortgaged as security; that $80,102.50 was paid out of this $83,500 to the plaintiff; that defendants gave plaintiff a second mortgage on the land for $34,000 to secure payment of the balance due on the transaction from the purchasers for the land and personal property; that all of the defendants either signed all of the pertinent documents involved or authorized their spouses to sign them; and that defendants, through their agent, Herman Schroeder, promised to pay for the land and personal property. The trial court found that plaintiff could recover against the defendants jointly and severally on either the theory of contract or estoppel and accordingly entered judgment for the sum of $18,302.41 plus interest of $2,506.66 for a total of $20,809.07 plus costs.

Defendants' initial contention on appeal is that the trial court erred in finding them liable on the second mortgage because it contains no promise to pay. They further urge that the court erred in finding that an agency relationship existed between Herman Schroeder and the other defendants so as to bind them as principals in the promise to pay made by Herman Schroeder.

The document in dispute is plaintiff's exhibit No. 1, the second mortgage. It indicates that the mortgagors are the eight buyers. This instrument was prepared on a preprinted mortgage form and was most inartfully completed. It provided as follows:

*"This Indenture Witnesseth, that the Mortgagor,* HERMAN O. SCHROEDER and NORMA J. SCHROEDER, his wife, and OTIS G. GOSNELL and SANDRA F. GOSNELL, his wife, and WALTER D. GREATHOUSE and MILDRED I. GREATHOUSE, his wife, and IVON J. POMEROY and KATHRYN M. POMEROY, his wife.

MORTGAGE AND WARRANT TO: ALFRED J. MATEYKA and NILDA M. MATEYKA, his wife, the sum of Thirty Four ($34,000.00) Thousand and No/100-------- bearing interest rate of seven percent (7%) payable each year in the amount of FOUR THOUSAND ($4,000.00) AND NO/100 DOLLARS, becoming due and payable January 1, 1982. Term of this mortgage is five (5) years.

Buyers have option to pay off mortgage at any time.

THE FOLLOWING DESCRIBED REAL ESTATE, to-wit:

The second mortgage states further, in pertinent part:

"That if default be made in the payment of the said promissory note—, or of any part thereof, or the interest thereon, or any part thereof, at the time and in the manner above specified for the payment thereof, *** then and in such case, the whole of said principal sum and interest, secured by the said one promissory note *** in this mortgage mentioned, shall thereupon, at the option of the said Mortgagee *** become immediately due and payable; ***."

This second mortgage, dated July 8, 1977, was prepared by Granite City Realty and is purported to have been signed by the eight buyers. We note, however, the uncontroverted testimony of Kathryn Pomeroy that her signature that appears on the second mortgage was not made by her. There was no promissory note accompanying this mortgage; consequently, defendants contend that the second mortgage is the only contract between the parties and it does not contain the words "promise to pay" or "shall pay" or any words of such import but rather merely a description of a debt and a pledge of real estate. Defendants conclude that the second mortgage grants to the plaintiff only a lien which, under certain conditions, may be foreclosed, but does not allow the plaintiff to sue for a deficiency without a personal promise to pay. In support of their position, defendants rely on three cases: *Oswianza v. Wengler & Mandell, Inc.* (1934), 358 Ill. 302, 193 N.E. 123; *Conerty v. Richtsteig* (1942), 379 Ill. 360, 41 N.E.2d 476; and *2140 Lincoln Park West v. American National Bank & Trust Co.* (1980), 88 Ill. App. 3d 660, 410 N.E.2d 990. Defendants cite these cases for the proposition that the second mortgage in this case is merely a pledge of real estate as security for payment, whereas a note is a contract of the maker to pay the debt. Accordingly, defendants urge that plaintiff's only remedy is to foreclose on the property because, in the absence of a note, they are not personally liable.

■ In reviewing these cases, we find them to be distinguishable. First, each of the cases involve two instruments, a note or bond secured by a mortgage or trust deed. Further, the issue in these cases was the construction of the note or bond *vis-a-vis* the mortgage or trust deed. Each involved the question of the construction of contracts in which the mortgage or trust deed contained obligations not mentioned in the note or bond. In the instant case, the warranty deed, the first mortgage to Madison County Federal, the second mortgage to the plaintiff, the lease back to the plaintiff, and the closing statement were offered by the plaintiff to prove that he had entered into a contract with Herman Schroeder and the other defendants and

to establish the full consideration and the amount due. In the instant case there was no note. There is no question about the construction of one document as it relates to another. The second mortgage from the eight buyers to the plaintiff, as well as the other documents offered into evidence, were offered by plaintiff as evidence of or a memorialization of the eight buyers' promise to pay him. Furthermore, we note that a mortgagor is personally liable if a mortgage contains a covenant to pay the debt secured, even though there is no note, bond, or other separate evidence or acknowledgement of the debt. 59 C.J.S. *Mortgages* sec. 341 (1949); *Morgan v. Niswonger* (1927), 123 Or. 79, 260 P. 1010.

Defendants' corollary contention is that the promise to pay an additional $34,000 on the second mortgage was made by Herman Schroeder and not by them. Defendants urge that they merely agreed to pledge land. They contend that plaintiff, by evidence regarding Herman Schroeder's agreement to pay certain monies to the plaintiff, is attempting to use the mortgage to prove a debt and to tie that debt to them through an agency theory. Defendants maintain that the evidence at trial showed no promise to pay by them and that the only evidence regarding the $34,000 debt came in by evidence regarding an agreement between Herman Schroeder and the plaintiff. Defendants conclude that this evidence applies only to Herman Schroeder and that the trial court's finding that Schroeder was their agent, thereby obligating them on the debt, was improper. Defendants urge that the plaintiff did not prove the existence of an agency authorizing Herman Schroeder to bind the defendants personally to pay $34,000 jointly and severally.

■ The trial court found sufficient evidence of an agency, thereby finding a promise to pay to plaintiff on the part of defendants. It is well established that because of the trial court's superior position to assess the credibility of the witnesses and determine the weight to be accorded to their testimony and to the evidence, its findings will be disturbed only if clearly contrary to the manifest weight of the evidence and not merely because a reviewing court might reach a different conclusion.

■ Without any direct evidence of agency, a *prima facie* case can be created by inference or presumption. Unless the parties' relationship is so clear as to be undisputed, the existence and scope of an agency relationship are questions of fact, to be decided by the trier of fact, in this case, the trial judge. (See *St. Ann's Home for the Aged v. Daniels* (1981), 95 Ill. App. 3d 576, 579, 420 N.E.2d 478, 481.) The existence of an agency relationship may be established, and its nature

and extent shown, by circumstantial evidence, and reference may be had to the situation of the parties, their acts, and other circumstances germane to the question. Moreover, the agency relationship need not depend upon an express appointment and acceptance by the principal and agent but may be implied from facts and circumstances. (*Tomaso v. Plum Grove Bank* (1985), 130 Ill. App. 3d 18, 23, 473 N.E.2d 588, 593.) Agency may be established and its nature and extent shown by parol evidence, whether direct or circumstantial, and if the evidence indicates one individual acting for others under circumstances implying knowledge on the part of the supposed principals of such acts, a *prima facie* case of agency is established. *City of Evanston v. Piotrowicz* (1960), 20 Ill. 2d 512, 518, 170 N.E.2d 569, 573.

In the case at bar, the plaintiff relies upon circumstantial evidence of implied authority in attempting to prove his case. Implied authority, as opposed to apparent authority, differs in that apparent authority flows from the acts of a principal and is distinguished in the case law from implied authority, which is derived from circumstantial evidence. Apparent authority, or authority by estoppel, arises when a principal, through words or conduct, creates a reasonable impression that the agent has authority to perform a certain act. Implied authority, on the other hand, is defined as actual authority circumstantially proved and is regarded as authority implied by facts and circumstances. *Devers v. Prudential Property & Casualty Insurance Co.* (1980), 86 Ill. App. 3d 542, 545-46, 408 N.E.2d 462, 465.

In the case at bar, we note that the four male buyers of the property (Herman Schroeder, Walter Greathouse, Otis Gosnell, and Ivon Pomeroy) were all in the real estate business and were associated with one another. Herman Schroeder was a real estate broker and was the employer of the other three male buyers. Schroeder conducted all the negotiations for the eight buyers and prepared all the vital documents for the eight buyers that were signed by or delivered to the plaintiff, *i.e.*, the warranty deed to the eight buyers, the lease back from the eight buyers to the plaintiff, a $34,000 second mortgage to the plaintiff from the eight buyers, and the closing statement. Prior to the purchase, all eight buyers viewed the property and looked at the land "with an eye toward whether or not it should be acquired." The four couples discussed the purchase of the farm and the equipment before it was made and purchased the property as a joint venture "investment," the agreement being that each couple would be acquiring a one-fourth equity interest in the property and each couple would be responsible for one-fourth of the monthly payment. At least some of the monthly payments were deducted by Herman Schroeder

from the commissions due to the male buyers from their real estate sales and Schroeder was responsible for making the monthly payments on the farm. The defendant buyers made substantial payments on the farm through Herman Schroeder to the extent that in excess of $23,000 in principal and interest was paid on the $34,000 second mortgage. The buyers accepted the benefits of ownership by leasing a portion of the farm back to the plaintiff and by borrowing money by mortgaging the farm. Herman Schroeder handled the selling of the farm equipment purchased with the farm and rented a portion of the farm to a tenant farmer.

■■■ Where parties silently stand by and permit an agent to act in their behalf in dealing with another in a situation where the agent may be presumed to have authority, the parties are estopped from denying the agent's apparent authority as to third persons. (*Szymkowski v. Szymkowski* (1982), 104 Ill. App. 3d 630, 633, 432 N.E.2d 1209, 1211.) An agent's authority may be presumed from silence of the alleged principals when they knowingly allow another to act for them as their agent. Furthermore, the scope of the agent's authority may be ascertained by determining what persons of reasonable prudence, ordinarily familiar with business practices, in dealing with the agent might rightfully believe him to possess, based on the principals' conduct. Where the principals place an agent in a situation where he may be presumed to have authority to act for them, the principals are estopped as against a third person from denying the agent's apparent authority. *Kalman v. Bertacchi* (1978), 57 Ill. App. 3d 542, 549, 373 N.E.2d 550, 556; *Elmore v. Blume* (1975), 31 Ill. App. 3d 643, 647, 334 N.E.2d 431, 434.

■ In the instant case, Herman Schroeder acted on behalf of all the defendants from the outset. The circumstances of this conduct, when viewed in its entirety, constitute events and actions which would reasonably lead an ordinarily prudent person to believe that Schroeder was acting on behalf of all the defendants. The general rule is that parties cannot repudiate acts of another done on their behalf and at the same time accept the fruits and benefits of those acts unless, within a reasonable time after learning that the acts of the other were unauthorized, they return the benefits. (*Corn Belt Bank v. Lincoln Savings & Loan Association* (1983), 119 Ill. App. 3d 238, 250, 456 N.E.2d 150, 159.) In the instant case, the buyers all accepted and recorded the deed of conveyance. By their own admission, they executed a mortgage which indicated that an additional $34,000 was due to plaintiff on the purchase price. Thus, they acquired actual knowledge of the fact that more money was due plaintiff. Moreover, defend-

ants did nothing to repudiate the acts of Herman Schroeder. Specifically, they could have returned the property and attempted to repudiate the obligation to pay plaintiff the additional $34,000.

As noted above, plaintiff is relying upon circumstantial evidence of implied authority when he claims that he proved, by the documents, testimony, and circumstances in evidence that Herman Schroeder had actual authority to purchase the farm for $115,000. In fact, we note that defendant Greathouse admitted that he knew the purchase price was $115,000. The eight buyers were aware of the fact that they borrowed $83,500, which was used to make the initial payment, and that they signed a second mortgage to plaintiff for $34,000 for the balance due after the initial payment. In *Elmore v. Blume* (1975), 31 Ill. App. 3d 643, 334 N.E.2d 431, the principal was held to have known of and ratified her agent's acts by virtue of the fact that she signed a deed. The court in *Elmore* went on to state that once a *prima facie* case of agency was established, defendants then had the burden of going forward with evidence that there was no agency and, if defendants failed to rebut the presumption of agency, the principal was bound by the acts of her agent. 31 Ill. App. 3d 643, 647-48, 334 N.E.2d 431, 434-35.

We conclude that the same rationale applies to the case at bar. Our review of the record indicates that the plaintiff established a *prima facie* case of agency and therefore defendants had the burden of going forward with evidence that there was no agency. The eight buyers all viewed the farm before the sale was closed, they allowed Herman Schroeder to negotiate the terms of the sale, they accepted and recorded a warranty deed, they signed a lease back to the plaintiff, and they signed a $34,000 mortgage to the plaintiff—all without repudiating the transaction or questioning Herman Schroeder's acts or authority. We find that defendants failed to rebut the presumption of agency.

Defendants urge that the fact that plaintiff had no communication with the purchasers, except Herman Schroeder, prior to the sale belies the existence of any agency. We find this to be of no consequence under the facts and circumstances in the record before us. This was to be expected when the other buyers permitted the employer of the male defendants, a realtor, to negotiate for their benefit, prepare all the documents involved, and handle all their payments. It is noteworthy that each one of the buyers knew that he was buying an interest in a farm and freely and knowingly signed a second mortgage indicating the balance due to the plaintiff. Now, after the fact, they complain and contend that the lack of communication with the

plaintiff prior to the sale is a defense. If the defendants had any questions or doubts regarding the sale of the farm, they should have cleared them up before they accepted the warranty deed to the 200 acres. We also find that the failure of the plaintiff to make demands on the defendants-appellants was natural in view of the fact that he had previously dealt only with defendant Herman Schroeder.

We conclude that the facts and circumstances in the record before us establish that the trial court's finding that Herman Schroeder was the agent for Walter and Mildred I. Greathouse and Otis G. and Sandra F. Gosnell was not against the manifest weight of the evidence. However, uncontradicted testimony in the record before us establishes: (1) that Kathryn Pomeroy denies signing plaintiff's exhibit No. 1 (the second mortgage); (2) that the signature that appears on plaintiff's exhibit No. 1 is not hers; and (3) that she neither gave anyone authority to sign her name to plaintiff's exhibit No. 1, nor was it her practice to allow others to sign for her. Inasmuch as Kathryn Pomeroy's signature does not appear on the second mortgage, she is not bound by it. We conclude, therefore, that the trial court's finding with respect to Kathryn M. Pomeroy is against the manifest weight of the evidence.

We further conclude that even if Herman Schroeder had no authority to negotiate the purchase of the farm for $115,000, all the defendants other than Mrs. Pomeroy are bound by his promise because they knowingly ratified Herman Schroeder's actions. Where an act is performed by one person without authority for the benefit of another, the act may be ratified by the person for whose benefit the act was performed. Ratification occurs upon the express or implied adoption of the acts of another by one for whom the other assumes to be acting, even without authority; and the consequences are the same as if the acts ratified had been fully authorized in the beginning. Acquiescence or a failure to repudiate on the part of the person for whose benefit the act was performed will be held to constitute a ratification. (*Copley v. Pekin Insurance Co.* (1985), 130 Ill. App. 3d 299, 302-03, 474 N.E.2d 57, 60.) Ratification may be express or it may be inferred from circumstances which the law considers to be equivalent to an express ratification. In the latter sense, ratification may be found to have taken place when the principal, with knowledge of the material facts of the unauthorized transaction, takes a position which is inconsistent with nonaffirmation of the transaction. Such ratification occurs, for example, when the principal seeks or retains the benefits of the transaction. *Karetzkis v. Cosmopolitan National Bank* (1962), 37 Ill. App. 2d 484, 490-91, 186 N.E.2d 72, 75.

██ In the instant case, Walter and Mildred I. Greathouse and Otis G. and Sandra F. Gosnell knew that they had purchased a 200-acre farm. This knowledge, coupled with their acceptance and recording of the deed and the signing of the lease and two mortgages, constitutes ratification of Herman Schroeder's action by such defendants. Having allowed Herman Schroeder to negotiate the purchase of the farm and equipment and failing to protest directly to the plaintiff that Schroeder had exceeded or may have exceeded his authority, such defendants are bound by the acts and statements of Schroeder with respect to the negotiations, agreements, and purchases from the plaintiff.

The defendants admit in their brief that there was a contract; however, without unequivocally arguing the point, they apparently deny that the sales price was $115,000. In effect, the defendants appear to claim that as to them it was a cash sale and that the full sales price was $81,000 for the farm and the equipment.

Our review of the record discloses that plaintiff, Herman Schroeder, and Walter Greathouse knew that the purchase price was $115,000; that all the buyers signed a note and mortgage to Madison County Federal and, therefore, knew that they had borrowed $83,500 to pay plaintiff; and that seven of the buyers signed the "$34,000" second mortgage to the plaintiff for the balance due on the purchase price, and, therefore, knew that there was a $34,000 balance due on the purchase price. In the second mortgage itself, the reference to the promissory note, the $34,000 amount, the 7% interest rate, and the phrase "becoming due and payable January 1, 1982," all clearly imply an underlying and supporting promise to pay $34,000 to plaintiff. It is apparent from the facts and circumstances in evidence that the price was not a secret and that the defendants knew the figures involved.

Plaintiff in his appellee brief submits that he had an express contract with the buyers; however, he argues alternatively that if this court feels he has not met his burden of proving an express contract, then, in that event, he has certainly proved an implied contract. Plaintiff submits that he has proved an express contract to pay $115,000 by virtue of his own testimony to that effect regarding negotiations with Herman Schroeder, by corroboration from the defendant Greathouse that the purchase price was $115,000, by the closing statement prepared by Schroeder, and by the mortgages executed by the buyers. By way of argument only, plaintiff submits that if this court feels that he has not met his burden of proving an express contract, then he has certainly proved an implied contract to pay the balance due on the second mortgage. In view of our determination that the trial court did not err in finding that an express contract was

proved by plaintiff, we need not consider this alternative contention of plaintiff.

Furthermore, inasmuch as we have found that the trial court's finding regarding the existence of an express contract is not against the manifest weight of the evidence, we deem it unnecessary to address defendants' remaining argument regarding the estoppel theory raised in count II of plaintiff's complaint.

Accordingly, for the reasons stated above, we affirm the judgment of the circuit court of Madison County with respect to all defendants except Kathryn M. Pomeroy. The judgment against Kathryn M. Pomeroy is reversed.

Affirmed in part and reversed in part.

JONES and WELCH, JJ., concur.