JANINA SIEMION, Appellee, v. THE DEPARTMENT OF PUBLIC AID *et al.*, Appellants.

First District (2nd Division)   No. 87—2245

Opinion filed March 16, 1988.

Neil F. Hartigan, Attorney General, of Springfield (Mark A. Lichtenfeld

and James C. O'Connell, Special Assistant Attorneys General, of Chicago, of counsel), for appellants.

Hayt, Hayt & Landau, of Evanston (William E. Leavitt and Paul A. Grabowski, of counsel), for appellee.

JUSTICE STAMOS delivered the opinion of the court:

The Department of Public Aid (the department) and the Director of Public Aid (the director) appeal from orders of the circuit court of Cook County reversing denial of appellee Janina Siemion's[1] application for medical assistance and denying appellants' motion to reconsider. Siemion's application had been denied after she failed to comply with written notices in English calling on her to provide documentation in support of her eligibility for medical assistance. The present appellant director was substituted for the former director during administrative review proceedings in the circuit court.

The controlling issue on appeal is whether appellants' denial of Siemion's application was contrary to Illinois law insofar as a departmental duty of assistance to her in pursuing her application was concerned. That was clearly the question decided by the circuit court's judgment.

FACTS

On July 16, 1986, with the help of Siemion's landlord, an employee of the University of Chicago Hospitals and Clinics (the hospital) completed and sent to the Cook County Department of Public Aid (the county department) on Siemion's behalf a form designated DPA 450 and titled "Hospital Application for Medical Assistance." The application, which the county department received on July 17, sought help in paying for treatment being given since July 3 to Siemion's then-2½-year-old son, Maciei Siemion, for head trauma, which Siemion's later testimony at a departmental hearing appeared to say was the result of his falling from a second-story window.

As submitted, the application set forth the name, address, and telephone number of Siemion and her son; her son's date of birth; and her landlord's name, address, and telephone number to "call in emergency." The application also stated that Siemion was single, had no

---

[1]In their pleadings and briefs, counsel for the parties have stated Siemion's given name as Sanina. However, from her original application for assistance and other early papers in the record, it is apparent that her given name is the normal Polish appellation Janina. The court chooses to use that form in this opinion.

assets, life insurance, or hospital insurance, and had paid nothing toward her son's hospital care. No answers were given to questions on the application form as to Siemion's or her son's birthplace, when they had come to Illinois, Siemion's social security number, the source of her income (if any), or why she sought help in paying for her son's care.[2] The application was signed on behalf of Siemion by J. B. Stone as the hospital's financial coordinator.

Testimony at the subsequent administrative hearing revealed that Siemion neither speaks nor reads English; that neither her father-in-law nor her mother-in-law, with whom she was living, speaks English; and that Siemion's landlord, who could translate for her, had helped the hospital employee to complete the application form. The form contained no question as to Siemion's language ability, and as submitted the application did not specify that Siemion could not understand English.

After receiving the application from the hospital, the county department mailed to Siemion on July 28, 1986, a form[3] designated DPA 267 and titled "Instructions to Client" on the letterhead of the Illinois Department of Public Aid. This form was entirely in English except for a caption advising in Spanish that it was a very important notification affecting its recipient's eligibility and that if the recipient did not understand English, an interpreter should be sought.

Through a process of checking boxes, filling blanks with abbreviations and rubberstamped legends, writing disconnected phrases above printed information, and requiring the recipient to ignore other blocks of inapplicable printed information for which boxes were left unchecked, the department sought to inform Siemion that her *"Mang* APPLICATION INTERVIEW is scheduled for (date) *8/11/86* at _____ a.m./p.m." (Italics denote filled-in blanks.) MANG is the acronym for "Medical Assistance—No Grant," the label for the category into which Siemion's application fell. (See 89 Ill. Adm. Code 101.20, 101.30(c) (1985).) Although the interview time was left unspecified, the department apparently wished Siemion to telephone it beforehand, because above all the printed information pertaining to it were handwritten the words, "Call before." Following the message about Siemion's interview was another blank form message and then the following printed and handwritten message: "Please BRING the items

---

[2] Siemion testified at a subsequent departmental hearing that she was employed and earning $120 weekly.

[3] It appears from the caseworker's writeup of Siemion's case that several other departmental forms were also sent to Siemion with this form.

checked below and this form to your interview. If you cannot make this appointment, please call *K McDonald EO3* at *793-8208*."

Appearing next on the form was a paragraph of inapplicable printed language and blank spaces, followed by a lengthy printed list of mostly documentary items preceded by boxes, many of which were checked. Among the items checked were one reading simply "Money from other sources (loans, gifts from friends, relatives, rental income, boarders, etc.)" and one reading (in print and handwriting) "Other *Room & board statement*." These latter two items would appear to the court as actually referring to *records* of money and to Siemion's son's hospital bill, but a recipient might have had some difficulty interpreting them. Above this list of items was handwritten the single word, "Mail."

The form's face thus consisted of one full page of closely printed alternative messages on which some blanks had been filled in handwriting and additional words had been handwritten. On the reverse were apparently still more "local office completion instructions." A copy of the form or forms sent to Siemion was also mailed to the hospital.

At some later time, county department caseworker Katherine McDonald made several attempts to reach Siemion at her home telephone number. McDonald noted on her case "writeup" the following: "Person who answers do not speak very good english. C/w unable to communicate." McDonald testified at the administrative hearing that "the person who answered did not speak English and was unable to communicate" and that McDonald could not determine what language was being spoken. McDonald's writeup also noted: "Landlord's name and tele no. given. Otherwise very limited information listed."

Then, on August 15, 1986, McDonald sent Siemion and the hospital a second version of the DPA 267 form. This version contained another lengthy printed and handwritten message, purporting to inform Siemion that if she did not respond by August 22 her application would be denied. A slightly different list of requested items had then been checked on this version of the form, followed by this message after the printed word "Other," in handwriting that was not a model of penmanship: "You failed to keep your telephone interview before 8/11/86 You failed to submit your documents."

Except for the fact that in a space on the forms sent to Siemion were stamped the name and address of the Hospital Assistance Service, nothing in the forms referred to the hospitalization of her son or advised her even in English that the sender was in charge of determining whether her son's hospital care would be paid for. Thus, not

only had Siemion herself never personally signed even an English document that specifically linked her son's hospital care to the Cook County or Illinois Department of Public Aid's administrative procedures, but also she had never received from either department any specific advice of such a link, in English or any other language.[4]

On August 26, 1986, after receiving no response as of August 22 to either of its two dispatches of forms, the Hospital Assistance Service decided to deny Siemion's application because "[e]ligibility cannot be established" and "[a]pplicant failed appointment." On or about August 29, which was 43 days after receipt of her original application, the service sent her a new form letter dated August 27 that denied her application. A copy of this form was sent to the hospital.

On October 15, 1986, counsel for Siemion filed an appeal to the department, alleging unfair denial of Siemion's application. A hearing was held on November 6, 1986, before a hearing officer for the department, at which time Siemion was represented by counsel from the law firm now representing her on appeal. Appellants repeatedly refer to this firm as "the hospital's attorneys"; at oral argument, Siemion's counsel acknowledged that the hospital had referred Siemion's case to them, but counsel pointed out that on this appeal they represent Siemion. Siemion was present at the departmental hearing, but speaking for her as interpreter was a neighbor whose own English was hardly adequate.

At the hearing, caseworker McDonald testified that no preappeal hearing or review had been held. (See 89 Ill. Adm. Code 104.11 (1985).) After relating the history of the case, McDonald testified that, when confronted by telephone with someone who could not speak English, "quite naturally you are not going to scream at them and tell them, well, I need an interpreter, blah, blah, you know. You just cannot communicate. *** So therefore you are sending a 267 to the hospital, as most of them do. When they get them, they understand. They have interpreters in the hospital. They do follow through."

Through her interpreter, Siemion testified that, though she had seen a telephone number on the forms she received, she was unsure what was to be done with it, and that her landlord, though able to speak English, had failed in an attempt to translate the forms authoritatively for her. She also testified that if someone had called her

---

[4]At oral argument in this court, counsel for appellants volunteered that Siemion probably never knew that an application had been filed in her behalf. Furthermore, although neither the county department nor the department was formally advised that Siemion's language was Polish, the department then failed to consult with anyone who might have so informed it.

landlord's number and left a message for her, the landlord would have conveyed it to her but that her landlord worked by day and there was no one available by day to make a telephone call for her.

After the administrative hearing, the then Director of Public Aid sent Siemion and her counsel a letter on November 13, 1986, advising that the department's final administrative decision was enclosed. The decision quoted these instructions from an internal departmental manual:

> "Once an application has been submitted to the local office, establishing initial eligibility is the joint responsibility of the applicant and the local office intake staff. It is the responsibility of the applicant to provide, to the extent possible, the factual information and evidence necessary to establish eligibility. *If the applicant is unable to do so, intake staff are to assist in obtaining such information.*
> ***
>
> Client cooperation in determining eligibility is required. Failure of the client to cooperate will result in the denial or discontinuance of assistance based upon the Department's inability to determine current eligibility." (Emphasis added.)

The decision then found that the foregoing policy had been followed and that "[b]y her own admission, [Siemion] received both notices, but made no attempts to contact the county department. Since neither the hospital nor [Siemion] responded to the appointment notices, the county department was unable to establish [Siemion's] eligibility for medical assistance." The decision therefore affirmed denial of Siemion's application.

After Siemion filed her complaint for administrative review, the circuit court entered an order on June 22, 1987, that the department's decision was contrary to law "due to the fact that plaintiff was unable to read or write or speak English, her only language being Polish [and] therefore IDPA notices written only in English deprived her of an opportunity to secure medical assistance."

In orally denying appellants' motion to reconsider, the trial judge made it clear that his order had rested not merely on the department's failure to send Siemion a notice in Polish but on what he considered to be the department's failure to fulfill a statutory duty of assisting Siemion, which would have included attempting to make contact with the landlord listed on her application. The circuit court's written order of July 10, 1987, then denied reconsideration "for the reasons stated in open court on the record." This timely appeal followed.

OPINION

The purpose of the Illinois Public Aid Code is "to assist in the alleviation and prevention of poverty and thereby to protect and promote the health and welfare of all the people of this State." (Ill. Rev. Stat. 1985, ch. 23, par. 1—1; see *Rivera v. Department of Public Aid* (1985), 132 Ill. App. 3d 213, 217, 476 N.E.2d 1143, 1146; *Miller v. Department of Public Aid* (1981), 94 Ill. App. 3d 11, 12, 418 N.E.2d 178, 181, *appeal denied* (1981), 85 Ill. 2d 566.) The Code requires every employee of the department to "perform duties in such manner as to secure for every applicant *** the aid and services to which the person may be entitled." (Ill. Rev. Stat. 1985, ch. 23, par. 11—2.) The Code also provides that the county department and the department "shall assist applicants for public assistance to properly complete their applications."[5] (Ill. Rev. Stat. 1985, ch. 23, par. 11—4.) Applicants are to provide specified information on their assets and income. (Ill. Rev. Stat. 1985, ch. 23, par. 11—15(1).) The county department "shall promptly, upon receipt of an application, make the necessary investigation, as prescribed by rule of the Illinois Department, for determining the eligibility of the applicant for aid." (Ill. Rev. Stat. 1985, ch. 23, par. 11—5.) "Under no circumstances may any application be denied solely to meet an application-processing deadline." Ill. Rev. Stat. 1985, ch. 23, par. 11—6.

At departmental hearings on appeals by applicants initially denied aid, the responsible officials "shall conduct their hearings in such manner as seems best calculated to conform to substantial justice and the spirit of this Code" and "may make such additional investigation as they may deem necessary, and shall make such decision as to the granting of aid and the amounts thereof as in their opinion is justified and in conformity with this Code." (Ill. Rev. Stat. 1985, ch. 23, par. 11—8.4.) As Siemion's counsel noted at oral argument, this hearing could have resulted in examining Siemion's case *de novo* and securing deserved aid for her; but, as appellants' counsel forthrightly acknowledged, the thrust of the hearing was merely to determine whether the department's handling of Siemion's application had been "right." The court also observes that Siemion's counsel at the administrative hearing failed to make any affirmative argument for a fresh investigation.

Under one of the department's rules, titled "Pre-Appeal Review,"

---

[5]Before being rewritten in its present form in 1983, this section provided that the county department "shall render all possible assistance to applicants for financial aid and social services and in securing proof in support of the applications." Ill. Rev. Stat. 1981, ch. 23, par. 11—4.

upon the initiation of an appeal from an aid denial and before completing its statement of supportive facts, the department "shall immediately conduct an informal review of the action or inaction which has served as the basis for the appeal and, if indicated, reverse or modify its decision *or take other action, as necessary.*" (Emphasis added.) (89 Ill. Adm. Code 104.11(a) (1985).) In the case at bar, apparently no such review was conducted, nor was any such remedial action taken or considered.[6]

According to a department rule, "[a]n application is a signed request for assistance on a Department form which has been completed to the best of client's knowledge *and ability.*" (Emphasis added.) (89 Ill. Adm. Code 110.10(a) (1985), amended at 9 Ill. Reg. 6798 (effective Apr. 30, 1985).) According to another rule, "[a]ssistance programs shall be administered in such a way as to afford certain rights to clients, and assure that a complete explanation is given of client rights and responsibilities." (89 Ill. Adm. Code 102.10 (1985).) Another rule, specifically applicable to the type of assistance for which Siemion applied, provides that "[w]hen eligibility cannot be conclusively determined because the individual is *unwilling* or *fails* to provide essential information ***, the client is ineligible." (Emphasis added.) 89 Ill. Adm. Code 120.308(c) (1985).

"Generally, if [a] rule is consistent with the spirit of the statute and furthers its purpose, then the rule will be sustained." (*Rivera*, 132 Ill. App. 3d at 217, 476 N.E.2d at 1147.) But, especially when read in light of the statutory duty to assist applicants in completing

---

[6]At the November 6, 1986, hearing on Siemion's administrative appeal, the following exchange occurred:

"HEARING OFFICER FEULNER: ***
* * *
Did the appellant receive a Statement of Facts?

MS. BEST [Siemion's counsel]: I have received it and we're ready to proceed.

HEARING OFFICER FEULNER: Okay. Was there a pre-appeal hearing in this case?

MS. MC DONALD [caseworker]: No pre-appeal."

Though this apparently means that no preappeal review occurred as required by departmental rule, it was suggested at oral argument that such review may have been waived previously, or that Siemion's counsel's expression of readiness to proceed constituted such waiver. Siemion's counsel at oral argument informed the court that preappeal review is informal, often lasts 60 seconds or less, and can be conducted by telephone. Still, 60 seconds is long enough for a knowledgeable person to inform the department that an applicant speaks only Polish, and if the department had secured such information it would have had ample opportunity under its own rules to adjust this case without the need for judicial review. 89 Ill. Adm. Code 104.11(a) (1985).

their applications (Ill. Rev. Stat. 1985, ch. 23, par. 11—4; see *Matthews v. Will County Department of Public Aid* (1987), 152 Ill. App. 3d 400, 402, 504 N.E.2d 529, 531), the foregoing departmental rules hardly warrant affirming the denial of an aid application merely on the ground that the applicant has failed to respond to two notices written in a language that she cannot understand and in a bureaucratic style that even English speakers might easily find rather cryptic.

Faced with her duty to assist Siemion in completing her application, McDonald's patently unsuccessful telephone contact with Siemion was insufficient in view of the fact that she made no effort to write or telephone the landlord listed as an emergency contact on Siemion's application. Had McDonald done so, she might have reached him or a member of his family, and according to Siemion the landlord would have been able to deliver a message to her.

Strengthening a conclusion that the department failed in its statutory duty to assist Siemion with the application process is the speed with which the decision to deny Siemion's application was reached.

Under the department's rules, notification of its decision on an application for "Aid to the Families with Dependent Children (AFDC) and related MANG" was to be sent within 45 days of Siemion's application. (89 Ill. Adm. Code 110.20(b)(4) (1985).) The decision letter was sent 43 days after the application was received. However, "[t]he time limitation for determining eligibility for AFDC may be extended another 45 calendar days when a decision cannot be reached because information necessary for a determination is available only from third parties and such parties fail to respond or delay their response to a request for such information." (89 Ill. Adm. Code 110.20(c) (1985).) Clearly, in Siemion's case, her landlord or some other person who could translate for her (such as the hospital, according to appellants' own contentions) was such a third party. Thus, by one of the department's own rules, it was permitted to explore Siemion's eligibility further rather than deny her application forthwith. In addition, the department was prohibited by statute from denying an application merely to meet a processing deadline. Ill. Rev. Stat. 1985, ch. 23, par. 11—6.

Though the denial was ostensibly based on Siemion's failure to respond to notices, the failure became critical only because the department failed to assist her in any meaningful way to complete her application, while choosing instead to issue a denial letter by an established deadline. Thus, the failure to assist and the seemingly inexorable march of forms and processing routines combined with Sie-

mion's ignorance of English to deprive her of assistance to which she may well have been entitled.

■■ Appellants argue that Siemion had her own duty to cooperate with the department, and it is true that acceptance of welfare benefits creates certain obligations, one of which is that the recipient comply with reasonable State welfare regulations intended to assist the State in determining eligibility. (*Fitzpatrick v. Department of Public Aid* (1972), 52 Ill. 2d 218, 223, 287 N.E.2d 666, 669; *Jamison v. Weaver* (1975), 30 Ill. App. 3d 389, 394, 332 N.E.2d 563, 567; see *Wyman v. James* (1971), 400 U.S. 309, 318-19, 27 L. Ed. 2d 408, 414-15, 91 S. Ct. 381, 386-87.) However, in the present case, it is the department that failed to comply with statute or "with either the letter or the spirit of its own regulation[s]" (*Jamison*, 30 Ill. App. 3d at 395, 332 N.E.2d at 567), which call for considerate assistance that appellants in their brief deride as "hold[ing] an applicant's hand." Siemion did not overtly refuse to comply with any regulations; at worst, she failed to comply with two form letters and with the technical requirements for filling out an application form, and she alleges plausibly that this was from ignorance rather than defiance.

As appellants urge, there is undoubtedly a joint responsibility on the applicant and the department to assemble the evidence required to determine eligibility. Still, the weight of that responsibility should not invariably and at all times fall equally on both parties, particularly since the department's duty to explain and assist in securing all deserved aid is expressly mandated. (Ill. Rev. Stat. 1985, ch. 23, pars. 11–2, 11–4; 89 Ill. Adm. Code 102.10 (1985); Illinois Department of Public Aid Categorical Assistance Manual AFDC PO—315.4.) As Siemion argues, the caseworker should play the leading role in coordinating a team effort in Siemion's behalf rather than totally rely on others. A departmental duty to assist with completing an application would be meaningless if the applicant were first required to submit a perfect application before "assistance" had to be rendered.

■ Appellants contend that by sending copies of notices to the hospital, they performed their duty to assist Siemion both because the hospital was Siemion's agent and because, as McDonald testified, hospitals "have interpreters and usually follow through on applications." Appellants carry this agency argument to considerable length.

Yet the hospital filed no power of attorney with the department, and Siemion's application listed her landlord rather than the hospital as an emergency contact. The department's own rules authorize "someone acting responsibly in behalf of the applicant" to sign an application when an applicant is physically or mentally unable to do so.

(89 Ill. Adm. Code 110.10(b)(2) (1985), amended at 9 Ill. Reg. 6798 (effective Apr. 30, 1985).) In addition, a rule provides that "[t]he applicant may be assisted by the Department and by individuals of the applicant's choice in completing the application." (89 Ill. Adm. Code 110.10(d) (1985).) If a person were constituted the applicant's continuing agent by proceeding under the authority of these rules, which themselves say nothing about creating any agency, a grave responsibility would be placed unwittingly on one who sought only to aid the applicant as encouraged by the department's rules. Indeed, by appellants' logic, since either the department or someone else is permitted to assist the applicant, then the department would itself become the applicant's agent if it assisted her.

Meanwhile, a departmental rule amendment specifically provides that an application need not be signed by the applicant "[w]hen the applicant has appointed an authorized representative with the Department. (An authorized representative is a person authorized by the applicant to act on his/her behalf.)" (9 Ill. Reg. 6798 (adopted Apr. 30, 1985).) This specific recognition of the possibility of appointing a representative detracts considerably from appellants' contention that the hospital informally or unwittingly became Siemion's agent merely by its employee's signing her original application.

Besides, the department did not deal with the hospital as Siemion's agent. The county department's caseworker telephoned only Siemion but not the hospital when she wished to communicate with Siemion. When the caseworker sent to the hospital copies of notices that were sent to Siemion (which at oral argument counsel for appellants contended was "better" than telephoning the hospital), she appended no notation that Siemion was having difficulty in communicating with the county department and that the hospital should try to assist. No course of dealing with the hospital as agent was established, since the hospital never responded to the notices gratuitously sent to it by the caseworker.

Appellants cite *Mateyka v. Schroeder* (1987), 152 Ill. App. 3d 854, 504 N.E.2d 1289, as stating that an agency relationship may be established and shown by circumstantial evidence, but *Mateyka* points out that apparent authority (as distinguished from implied authority) stems from a principal's acts in leading others to believe that a putative agent is authorized as such, whereas implied authority is actual authority proved and derived from facts and circumstances. (*Mateyka*, 152 Ill. App. 3d at 863, 504 N.E.2d at 1294-95.) Appellants contend for apparent authority, yet Siemion herself did absolutely nothing, except perhaps for allowing the hospital to submit an application for her

on one occasion, that would lead the department to believe that the hospital was thereafter authorized to act as her agent. Furthermore, the hospital itself did nothing thereafter that might seem to be the acts of an agent.

Even if appellants were to urge a theory of implied rather than apparent authority, they should fail, because there were no facts or circumstances reasonably implying that the hospital ever had any actual authority except perhaps to act momentarily as Siemion's agent for purposes of signing and mailing the application. By contrast, in *Mateyka*, there was a long course of dealing between plaintiff and defendants as to the relevant subject matter, from which an implied agency authority was derived.

Appellants contend that the legislature "never intended that busy caseworkers be required to hold an applicant's hand throughout the application process." Yet—to paraphrase what was written of another public-welfare agency's contentions regarding administrative inconvenience—when the statutory requirement to assist was adopted, the balance between administrative convenience and Siemion's need for assistance was struck in favor of providing assistance. (See *Slaughter v. Levine* (8th Cir. 1986), 801 F.2d 288, 297, *cert. granted sub nom. Gardebring v. Jenkins* (1987), 479 U.S. 1081, 94 L. Ed. 2d 138, 107 S. Ct. 3208; *cf. Mount Sinai Hospital v. Brinn* (N.Y. Civ. Ct. 1973), 73 Misc. 2d 1, 4, 341 N.Y.S.2d 208, 212 (welfare department failed in duty to facilitate filling out complicated application form); *Lavigne v. Department of Social Welfare* (1980), 139 Vt. 114, 118, 423 A.2d 842, 844 (caseworkers must list clearly the types of work-related expense deductible from gross income).) That balance was further tipped by adoption of the department's own rules calling for assistance. 89 Ill. Adm. Code 102.10 (1985); Illinois Department of Public Aid Categorical Assistance Manual AFDC PO—315.4.

■ Deference is generally to be given the decision of an agency on administrative review, but courts will not hesitate to intervene when the decision is arbitrary, unreasonable, or capricious. (*Kneip v. Board of Fire & Police Commissioners* (1986), 150 Ill. App. 3d 870, 872, 502 N.E.2d 436, 438.) Interpretations given by an administrative agency to its own rules are entitled to respectful consideration and will not be overruled unless plainly erroneous. However, unlike properly supported findings of fact, they are not conclusive on reviewing courts. (*Kneip*, 150 Ill. App. 3d at 872, 502 N.E.2d at 438.) After extensive briefing and oral argument, the circuit court found that appellants' final administrative decision was contrary to law because appellants had failed to fulfill their statutory duty of assistance in the

application process prior to denying Siemion's aid application. We agree and need not reach questions of Federal statutory and constitutional law raised by the parties.

We affirm the circuit court's judgment. In addition, we find that fundamental fairness requires that Siemion be given an opportunity to reapply for benefits (see *Brengola-Sorrentino v. Department of Public Aid* (1984), 129 Ill. App. 3d 566, 574, 472 N.E.2d 877, 882), and the department is ordered to process any new application by Siemion pursuant to all applicable statutes and regulations, including requirements that she be fully assisted in completing her application.

Affirmed.

HARTMAN, P.J., and SCARIANO, J., concur.