ANGELA BENNETTO, Plaintiff-Appellant, v. THE DEPARTMENT OF PUBLIC AID *et al.*, Defendants-Appellees.

First District (6th Division)   No. 1—89—0144

Opinion filed January 12, 1990.

2

Hayt, Hayt & Landau, of Evanston (Paul A. Grabowski, Mary D. Aversano, and Raymond E. Clutts, of counsel), for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Robert J. Ruiz, Solici-

tor General, and David Adler, Assistant Attorney General, of Chicago, of counsel), for appellees.

PRESIDING JUSTICE LaPORTA delivered the opinion of the court:

Plaintiff, Angela Bennetto, applied for medicaid benefits and was denied. The denial was affirmed after an administrative review, and she appealed to the trial court, which also affirmed. We reverse and remand for further proceedings in accordance with this opinion.

Three issues were raised on appeal: whether the Illinois Department of Public Aid (IDPA) breached a duty to assist the plaintiff in obtaining benefits by securing necessary verifications to support her application; whether plaintiff should have been granted benefits because she is a person permanently residing under color of law; and whether the copy of the automobile title and the Immigration and Naturalization Service (INS) receipt were timely mailed by plaintiff, and whether receipt of them should be inferred.

Plaintiff was born in Mexico and moved to the United States in 1971. In 1975, she married Gordon Bennetto, a United States citizen. They have four children.

On April 15, 1987, plaintiff's husband and a hospital caseworker filed for medicaid benefits on plaintiff's behalf, submitting copies of numerous documents with the application, including birth certificates for plaintiff, her husband, and three of their children; social security cards for plaintiff and three of their children; plaintiff and husband's marriage certificate; and other documents.

A letter (Form 267) was sent to plaintiff, directing her to contact a caseworker at the IDPA by or on May 1, 1987. Plaintiff contacted the caseworker, who informed her that IDPA needed a copy of their automobile title and documentation from the INS as to plaintiff's status. A second Form 267 was sent to plaintiff repeating this information.

Plaintiff testified that she mailed copies of the automobile title and a receipt from INS to the caseworker; the caseworker testified that these had not been received. In a follow-up call approximately two to three weeks later, the caseworker informed plaintiff that the documents had not arrived, and she and her husband testified at the administrative review hearing that they decided to hand deliver the next copies.

Plaintiff and her husband also attempted to contact INS to determine the status of plaintiff's application for permanent residence. Someone at INS told them that plaintiff's file was lost and they would

have to refile the application for her permanent residency status.

Plaintiff and her husband did not send the necessary verifications to IDPA by May 14, 1987, the date specified in the caseworker's second Form 267, and plaintiff's application for medicaid was denied on June 18, 1987. However, plaintiff and her husband testified without contradiction that they met with the caseworker in late June and were not informed at that time that the application had been denied nor that they had the right to request a reconsideration of the application. On July 1, 1987, plaintiff appealed the denial of benefits.

Plaintiff and her husband continued to attempt to obtain information regarding plaintiff's residency status from INS. On July 3, 1987, plaintiff and her husband went to the local INS office to attempt to obtain the necessary documentation of her status but found the office closed. Upon leaving the area they sustained injuries in a motorcycle accident, which delayed their attempts to obtain the necessary documents of plaintiff's citizenship status.

At an administrative review hearing, plaintiff proffered copies of the car title and INS receipt. After the hearing, the hearing officer made a finding of fact that plaintiff had in fact not mailed the verifications to IDPA and affirmed the denial of benefits. Plaintiff appealed to the circuit court, and after a hearing, the trial judge affirmed the decision of the administrative review officer. Plaintiff appealed to this court.

In reviewing an administrative decision, the trial court may not entertain "new or additional evidence in support of or in opposition to any finding, order, determination or decision of the administrative agency" and "[t]he findings and conclusions of the administrative agency on questions of fact shall be held to be prima facie true and correct." (Ill. Rev. Stat. 1987, ch. 110, par. 3—110.) The court may only review the agency's findings to determine whether they are supported by the manifest weight of the evidence (*Cohen v. Department of Insurance* (1988), 173 Ill. App. 3d 363, 369, 527 N.E.2d 581, 586), and the fact that the evidence is conflicting (*Hofmeister v. Department of Registration & Education ex rel. Galvin* (1978), 62 Ill. App. 3d 777, 781, 379 N.E.2d 383, 386), or even that the evidence supports the opposite view (*Sheehen v. Board of Fire & Police Commissioners* (1987), 158 Ill. App. 3d 275, 287, 509 N.E.2d 467, 476), does not alone authorize reversal. If the evidence sustains the agency's decision, that decision must be upheld. *Bultas v. Board of Fire & Police Commissioners* (1988), 171 Ill. App. 3d 189, 194, 524 N.E.2d 1172, 1175.

Plaintiff argues that IDPA failed to adequately assist her in applying for benefits, first by not assisting her in obtaining needed support-

ing information, and secondly, by not informing her of alternative and equally acceptable proofs. IDPA responded that it was incumbent upon plaintiff to provide verification of her family's assets, and to either provide or request assistance in obtaining proof of her alien status; because plaintiff did neither, IDPA was required to deny her application for medicaid benefits.

The Illinois Public Aid Code (Ill. Rev. Stat. 1987, ch. 23, par. 1—1 *et seq.*) directs IDPA employees to act courteously (Ill. Rev. Stat. 1987, ch. 23, par. 11—2) and provides that IDPA employes may assist applicants "in securing evidence in support of their eligibility" (Ill. Rev. Stat. 1987, ch. 23, par. 11—4).

The Illinois Administrative Code section discussing "Client Cooperation" for medical assistance benefits states that when third-party information is required, and the applicant is unable to obtain this information, "upon the applicant's request the Department will assist in securing evidence to support the client's eligibility for assistance." (89 Ill. Adm. Code §120.308(d)(3) (Supp. 1988).) The Illinois Department of Public Aid Manual, cited by plaintiff, states that if the applicant cannot provide verification, "staff with the consent of the applicant will assist in obtaining such information." IDPA Manual, PO—315(2).

The case primarily relied upon by plaintiff concerns an applicant who neither spoke nor read English, and although her application did not specify this limitation, it did give her landlord's name, address, and telephone number for an emergency contact. (*Siemion v. Department of Public Aid* (1988), 168 Ill. App. 3d 187, 188-89, 522 N.E.2d 627, 628-29.) Her application was denied within the 45-day processing period. (*Siemion*, 168 Ill. App. 3d at 195, 522 N.E.2d at 633.) The appellate court affirmed the trial court's finding that IDPA failed to adequately assist the applicant in processing her application because it did not contact her landlord when it could not contact the applicant. (*Siemion*, 168 Ill. App. 3d at 195, 522 N.E.2d at 633.) The appellate court was critical of IDPA for its swiftness in denying the application (*Siemion*, 168 Ill. App. 3d at 195, 522 N.E.2d at 633), especially because a telephone call to the applicant herself was inconclusive because of the language barrier (*Siemion*, 168 Ill. App. 3d at 191, 522 N.E.2d at 629-30).

In the case at bar, plaintiff's application was received on April 15, 1987, and denied on June 18, 1987, some 64 days later. Plaintiff and her husband understand the English language, corroborated not only by their testimony at the administrative review hearing but by the fact that they did attempt to comply with IDPA's requests for documentation and the fact that plaintiff had a telephone interview with

the IDPA caseworker on May 1, 1987.

Plaintiff also relies upon the administrative review and hearing officer's decision in *In re Appeal of Noreen Knight* (IDPA, Dec. 22, 1987), No. 87—11609—AMI. In that case, the hearing officer found that Knight's husband informed IDPA that the requested documents could not be provided because they were in rooms from which the Knights had been evicted, and found the "department did not suggest alternative means of securing the items or other acceptable forms of verification." (*Knight*, slip op. at 2.) The hearing officer reversed IDPA's rejection of Knight's application.

IDPA argues that it breached no duty to plaintiff because it is not required to take the initiative, but only to assist the applicant if requested to do so, and that plaintiff neither requested any assistance nor indicated that she was having any difficulty in obtaining the required verifications. Unlike *Knight*, there is no indication here that plaintiff or her husband either informed the caseworker that they were having difficulty in obtaining the required verifications or asked IDPA for assistance in obtaining the verifications. The caseworker did testify that plaintiff brought in the INS receipt after plaintiff's application had been denied. She did not testify that she refused the receipt nor otherwise indicate to plaintiff at that time that the application had been denied. Plaintiff and her husband testified that they were told only that the receipt was inadequate proof of status, and that they should obtain "some kind of letter" from INS to support plaintiff's claim of residency. There is no indication that the caseworker gave them any other information as to the type of proof required or in any way offered to aid them in obtaining the proof.

While the caseworker may have acted within the letter of the statute and regulations, she certainly did not act within their spirit. It is obvious from the record that plaintiff and her husband were trying to obtain the necessary proofs and were unsuccessful. At a minimum, the caseworker should have undertaken to assist them with specific information as to what proofs would be acceptable to IDPA to establish plaintiff's residency status in support of her application for benefits.

Plaintiff contends that because she is residing in the United States under color of law, she should have been granted medical assistance benefits. Plaintiff argues that she has resided in the United States continuously since 1971; that she is married to a United States citizen and has four children who are United States citizens; that she has a social security number and had previously received food stamps; and that her husband had filed an "immediate relative" petition

(Form I-130) for her to gain permanent residency, for proof of which she offered a copy of the receipt from INS indicating that the fee for filing this form had been paid.

■■ Among the persons eligible for medicaid benefits are "[a]liens lawfully admitted for permanent residence or permanently residing in the United States under color of law." (42 C.F.R. §435.402 (1988).) The Medicare and Medicaid Guide (the Guide) defines persons residing in the United States under color of law as aliens who "are the immediate relatives of an American citizen or a lawful permanent resident and have had filed on their behalf a Form I-130 petition for issuance of an immigration visa." (Medicaid and Medicare Guide §3212.4(f)(1).) However, the Guide clearly states that as proof of status the alien should have a Form I-94 and/or an I-210 Letter. (Medicare and Medicaid Guide §3212.4(f)(3).) Plaintiff apparently has been unable to produce such documentation. She could offer no documentation other than the receipt indicating that a Form I-130 had been filed, but the receipt gave no indication on its face either by or for whom the form was filed nor did it indicate plaintiff's current status with INS. This document alone does not fulfill the requirements of the Illinois Department of Public Aid nor by itself does it satisfy the Federal documentary requirements to qualify for medicaid benefits.

In a case with facts very similar to those of the case at bar, the Second Circuit held that a woman who had moved to the United States as a child, married a United States citizen, and subsequently bore six children who are United States citizens qualified as a person residing in the United States under color of law. (*Holley v. Lavine* (2d Cir. 1977), 553 F.2d 845.) The determinative factor, the court found, was a "formal letter" by INS to "a responsible official of the New York State Department of Social Services that 'deportation proceedings have not been instituted...for humanitarian reasons' and the 'Service does not contemplate enforcing her departure from the United States at this time.' " (*Holley*, 553 F.2d at 849.) This is distinguishable from the facts of our case because the plaintiff here has no official document from INS except for the receipt. (See also *Zurmati v. McMahon* (1986), 180 Cal. App. 3d 164, 225 Cal. Rptr. 374 (petitioner had a letter from INS which indicated that her request for political asylum was being considered, permitting her to remain in the United States in the interim and authorizing employment; the court held this insufficient to establish status as a person residing in the United States under color of law, because it did not comport with any of the six categories of such status, which the court found involve "an affirmative 'admission' or 'grant,' by a competent official authority, of a

specific status." (180 Cal. App. 3d at 175, 225 Cal. Rptr. at 380)).) Plaintiff was required to offer affirmative proof of her status, and the IDPA found she had failed to do so. We must consider whether her failure to document her status was sufficient reason to deny her medicaid benefits.

■ An examination of the Illinois Public Aid Code (Ill. Rev. Stat. 1987, ch. 23, par. 1—1 *et seq.*) discloses that IDPA employees are required to act courteously and with respect in dealing with applicants who seek public aid benefits and to "perform duties in such manner as to secure for every applicant and recipient the aid and services to which the person may be entitled." (Ill. Rev. Stat. 1987, ch. 23, par. 11—2.) Clearly, the spirit of the law is that IDPA personnel should render whatever assistance is necessary to a qualified applicant so that benefits available to that person are not withheld or denied because of the applicant's confusion or misunderstanding of documentation required to qualify, or of the time limitations within which the filings must occur, or of any other deficiencies in the application process. It is contrary to the spirit of the Illinois Public Aid Code that an application be summarily rejected for the applicant's failure to file supporting documents if no attempt is made by IDPA to assist the applicant in obtaining the requisite proofs of alien status if and when the applicant has difficulty in accomplishing such compliance on her own.

Here the plaintiff attempted to comply when the caseworker advised her that, in addition to the substantial documentation filed with the application, she was required to file a copy of the car title to verify her family's assets and to submit some proof of her status from INS. Plaintiff testified that she mailed copies of both the car title and the receipt verifying the application for permanent residence filed with INS on her behalf. The caseworker testified that she did not receive them, but she did not testify that she made any attempt to advise plaintiff that these documents had not been received prior to the denial of medicaid benefits nor did she testify that she made any attempt to contact INS directly to verify plaintiff's status either before or after the denial of benefits.

The record discloses the substantial efforts of the plaintiff to comply with IDPA's requirements. Plaintiff testified that she was advised by INS that the file on her application for permanent residence had been lost and that she was advised by them to reapply. Plaintiff produced the receipt she had to verify that her application for permanent residence had been filed in 1983, which was the only documentary proof she had.

Plaintiff filed her application for medicaid benefits with IDPA on April 15, 1987. Five months prior to her application, on November 6, 1986, the Immigration Reform and Control Act (the Act) (Pub. Act 99—603) was passed. The Act at section 203 changed the requirements to establish residence under color of law. Prior to the Act, an applicant qualified for this status if she had resided in the United States continuously from June 30, 1948, to the date of application. Section 203 changed the requirement to continuous residence in the United States from January 1, 1972, to the date of application.

■ Unless a statute specifies otherwise it becomes effective as of its date of passage. (*Lapeyre v. United States* (1873), 84 U.S. (17 Wall.) 191, 21 L. Ed. 606; *Matthews v. Zane* (1822), 20 U.S. (7 Wheat.) 164, 5 L. Ed. 425; *United States v. Cirrincione* (N.D. Ill. 1985), 600 F. Supp. 1436, 1438, *aff'd* (1985), 780 F.2d 620; *General Telephone Co. v. Johnson* (1984), 103 Ill. 2d 363, 379, 469 N.E.2d 1067, 1076-77.) The applicable Federal regulation (8 C.F.R. §249.2(a) (1989)) detailing what constitutes sufficient proof of residence was published in the Federal register on March 3, 1987 (52 Fed. Reg. 6322 (1987)), 43 days before plaintiff filed her application.

■ Even though the Federal change was in effect on the date of plaintiff's application, the relevant portion of the Illinois Administrative Code was not changed until May 17, 1988, over one year later. (89 Ill. Adm. Code §120.310 (Supp. 1988).) Clearly IDPA did not process plaintiff's application under the amended Federal guidelines. An agency's delay in implementing a Federal statute will not be permitted to defeat the intent of that statute. Because the Federal regulations on eligibility for medicaid benefits state that "[a]liens *** permanently residing in the United States under color of law" are eligible for benefits, and because plaintiff's application for benefits indicates that she moved to Illinois in 1971, she should have been offered the opportunity to prove her continued residence in the United States from January 1, 1972, under the amended Federal guidelines.

Plaintiff produced a copy of the car title and the receipt from INS showing that an application for permanent residence had been filed on her behalf. Both were rejected by the hearing officer as not timely filed.

■ We find IDPA's processing of plaintiff's application for medicaid benefits was a summary disposition and as such was unnecessarily harsh and contrary to the spirit of the Illinois Public Aid Code. Plaintiff was not offered the expertise or assistance of the caseworker in the gathering of supporting documentation necessary to complete her application even though the statute requires it.

10

For these reasons, we reverse and remand with directions to IDPA that plaintiff's application for medicaid benefits be reinstated for further processing, that IDPA assist plaintiff in documenting her status as a person residing in the United States under color of law since January 1, 1972, and in assembling any other proofs required to process her applications for medicaid benefits to its conclusion.

Reversed and remanded.

McNAMARA and EGAN, JJ., concur.