2025 IL App (1st) 232282
Opinion filed: March 13, 2025

FIRST DISTRICT
FOURTH DIVISION

No. 1-23-2282

| | | |
|---|---|---|
| MONICA HAMPTON, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | No. 22 CH 6777 |
| | ) | |
| DULCE QUINTERO, in Her Official Capacity as | ) | Honorable |
| Secretary of Human Services, and THE DEPARTMENT | ) | Michael T. Mullen |
| OF HUMAN SERVICES, | ) | Judge, presiding. |
| | ) | |
| Defendants-Appellees. | ) | |

PRESIDING JUSTICE ROCHFORD delivered the judgment of the court, with opinion.
Justices Hoffman and Lyle concurred in the judgment and opinion.

**OPINION**

¶ 1    Plaintiff, Monica Hampton, appeals from the circuit court's judgment affirming the final

administrative decision of the Department of Human Services (Department). In that decision, the

Department determined that it was not obligated to consider whether plaintiff was eligible for

Temporary Assistance for Needy Families (TANF) when plaintiff completed the redetermination

process of her eligibility for her current assistance, the Supplemental Nutrition Assistance Program

(SNAP) and medical benefits. As part of the process, plaintiff was required to complete and submit

a Department-designated form (redetermination form). On appeal, plaintiff, relying primarily on

section 11-4 of the Illinois Public Aid Code (305 ILCS 5/11-4 (West 2022)), contends that the

Department should have treated the redetermination form as an application for public assistance

and considered her eligibility for TANF. She also argues that the hearing officer improperly

disregarded her testimony that she verbally requested TANF during the redetermination process.

We reverse the judgment of the circuit court affirming the Department's final decision and the Department's final decision and remand to the Department for further proceedings.

¶ 2 Initially, we briefly describe the Department's role and the relevant statutory and regulatory provisions as a way of better understanding the factual and procedural history of this case. A more in-depth discussion of the statutory framework is contained in the analysis.

¶ 3 The Department is charged with the administration of Illinois financial assistance programs, including SNAP and TANF, pursuant to the Public Aid Code (305 ILCS 5/1-1 *et seq.* (West 2022)) and the portion of the Illinois Administrative Code that applies to public aid programs (89 Ill. Adm. Code 10). The Department created a "Cash, SNAP, and Medical Manual," consisting of a policy manual (PM) that "describes policy" and a workers' action guide that "contains the procedures by which the policy is implemented."

¶ 4 SNAP provides "increased food purchasing benefits to recipients" eligible under federal guidelines. 89 Ill. Adm. Code 10.130(c) (2013). TANF provides direct cash payments to recipients. *Id.* § 10.130(b). An individual seeking assistance may file an application in writing for a determination of their eligibility to receive benefits. 305 ILCS 5/11-15(1) (West 2022). Under section 11-4 of the Public Aid Code, an "application for public assistance shall be deemed an application for all such benefits to which any person may be entitled except to the extent that the applicant expressly declines in writing to apply for particular benefits." *Id.* § 11-4. The Department provides applicants with notice of its decisions as to their eligibility for benefits (89 Ill. Adm. Code 10.420 (2013)), and an applicant has the right to appeal (89 Ill. Adm. Code 10.280 (2019)).

¶ 5 Periodically, the Department is to determine the continued eligibility of all recipients for assistance, and the recipients are responsible for cooperating in the redetermination of eligibility. See 89 Ill. Adm. Code 121.120 (2015) (providing deadlines for redetermination of eligibility for

SNAP based on the recipient's certification period); 89 Ill. Adm. Code 112.320(a) (2007) (providing that a redetermination of eligibility of TANF "shall be conducted at least once in a 12-month period"). As relevant here, a redetermination of eligibility for SNAP "involves the completion of an application, an interview, a review of eligibility and cooperation in the verification of eligibility." 89 Ill. Adm. Code 121.120(a) (2015).

¶ 6    Plaintiff, a mother of two children, was a recipient of assistance through the Department. In September 2020, the Department issued a notice of decision (September 2020 decision), informing plaintiff that her SNAP increased and her medical benefits stayed the same and also denying her August 2020 application for TANF, because her income was sufficient to meet her needs.

¶ 7    On February 2, 2021, the Department issued plaintiff a notice that her SNAP benefit period was ending on March 31, 2021 (2021 redetermination notice), which included the redetermination form, also known as a form 1893, titled "SNAP Redetermination Interview Required and Medical Benefits Renewal Form"; a form 4474, titled "Guide to IDHS Services" (guide); and a form 4765 titled "Verifications" (verifications form). The first page of the redetermination form explained: "If you do not complete a redetermination your benefits will stop. To keep getting benefits without a break and to allow time for us to process your redetermination, please complete it by March 1, 2021, but no later than March 15, 2021." The completed redetermination form could be submitted online, by mail, by fax, or in person. In bold lettering, plaintiff was informed that she "must have an interview with a caseworker to reapply for SNAP" but not for medical benefits, which would be scheduled when the "application" was returned. The redetermination form contained a series of questions seeking information that was necessary for the Department to determine whether plaintiff continued to be eligible for her current benefits. Plaintiff was to sign the last page under

- 3 -

the language: "This application must be signed below. By signing below; I swear \*\*\* the answers on this application are true and correct to the best of my knowledge."

¶ 8    The guide listed services that are provided by the Department, including cash assistance, and explained "[y]ou can apply for services by going to your local IDHS office, or you can call the office and ask them to mail you an application. In some cases, you can apply for services over the phone or online." The verifications form, in relevant part, explained that "[a]t this application" plaintiff was required to report specific information, and it provided a list. It went on to state that the Department would notify plaintiff if it needed further information to "process [plaintiff's] application." The verifications form also provided a general information section, explaining:

> "[The Department] secures and uses information about all clients through the income and eligibility verification system. \*\*\* We will use any information we get to determine eligibility for benefits and the amount of benefits provided for all programs. \*\*\* Information on this form may be used in computer matching with other state and federal agencies, program review or audits, and to make sure that the household is eligible or continues to remain eligible for SNAP benefits, other federal assistance programs, and federally assisted state programs, such as school lunch, TANF and Medicaid."

¶ 9    It is undisputed that plaintiff completed and then submitted the redetermination form to the Department on March 19, 2021. The 2021 redetermination notice, but not the completed redetermination form, is in the record on appeal.

¶ 10    On March 24, 2021, the Department issued a notice of decision (March 2021 decision) approving plaintiff's March 19, 2021 "application for [SNAP] benefits" and informing her that her eligibility for medical benefits stayed the same. The March 2021 decision did not mention TANF.

¶ 11    On August 23, 2021, plaintiff submitted an application requesting "Cash Assistance" and "Healthcare Coverage-Ongoing" (August 2021 application). On September 29, 2021, the Department issued a notice of decision" (September 2021 decision) increasing plaintiff's SNAP, providing one supplemental SNAP allotment "to supplement [her] food needs before we have a chance to increase [her] regular monthly allotment," and "increas[ing]" her "Cash Benefits."

¶ 12    On October 26, 2021, plaintiff administratively appealed the earlier March 2021 decision relating to the redetermination form on the ground that the Department had failed to consider whether she was entitled to TANF as part of the redetermination process.

¶ 13    On April 6, 2022, an administrative law judge (ALJ) held a telephonic hearing on the appeal. Plaintiff was present and represented by counsel, and Karen Kellum, a case manager, appeared for the Department. At the start of the hearing, plaintiff's counsel explained to the ALJ that there were three issues on appeal: whether the redetermination form should have been treated as an application under section 11-4 of the Public Aid Code (305 ILCS 5/11-4 (West 2022)), whether the Department had to consider if plaintiff was eligible for TANF when she submitted the redetermination form, and whether there was a resulting underpayment of TANF benefits. During the hearing, plaintiff's counsel referred not only to section 11-4 of the Public Aid Code but also to PM 19-02-00, titled "Special Reviews and Redeterminations (Cash, Medical)," and PM 23-01-00, titled "Underpayments (Cash, SNAP)," in support of plaintiff's positions.

¶ 14    The Department-admitted exhibits included the 2021 redetermination notice, which included the redetermination form, the guide, and the verifications form, and a printout of workers' action guide 19-03-03, which is associated with PM 19-03-03, titled "SNAP REDE Process" and reflecting that it gives guidance on redetermination applications. Plaintiff admitted the September 2020, March 2021, and September 2021 decisions and the August 2021 application.

¶ 15 Kellum testified that, on February 2, 2021, the Department sent plaintiff the 2021 redetermination notice. The redetermination form (form 1893) notified her that she was required to undergo a redetermination of eligibility for the benefits she was receiving, SNAP and medical. The guide (form 4474), listed the services provided by the Department, including cash assistance. On March 19, 2021, plaintiff submitted the redetermination form. According to Kellum, a form 1893 is "not an application" but used "to determine the programs that [plaintiff] was receiving at that time, which was the SNAP and medical only." She explained that PM 19-03-03 refers to a redetermination as an "REDE application" but is not an "initial application." An initial application is made using a form 2378 or 2905.

¶ 16 Kellum stated that on March 22, 2021, Tashonda Carter, a caseworker for the Department, interviewed plaintiff as to the redetermination. Kellum read Carter's case comments into the record, which revealed that, at the time of the redetermination, the Department had plaintiff's income information and employment history. The case comments did not include a notation that plaintiff made an oral request for TANF.

¶ 17 Plaintiff testified that she worked for Amazon from December 8, 2020, to about February 2021. She began working at Dollar Tree in the middle of May 2021 but did not work every week.

¶ 18 In answering questions from her counsel as to her conversations with the Department, plaintiff maintained that she told the Department that she was no longer employed by Amazon but did not remember when that conversation took place. During the conversation, someone from the Department asked her to send her check stubs and to discuss why she was applying for TANF.

¶ 19 Kellum asked plaintiff "why didn't [she] request cash when she was speaking to the caseworker, [Carter]?" Plaintiff maintained that she did ask for cash at that time. More specifically, plaintiff testified that she "was on the phone and [she] requested cash too because [she] was having

troubles" with the Department's website and she was told to send income documentation. Kellum responded that Carter would not have had a reason to ask her for income records. Plaintiff was then asked by counsel whether she asked for cash assistance on March 19 or 22 or "was it later?" Plaintiff answered that "[i]t was on the phone and later." Her counsel then asked, "so you think that would have been on the 22nd, in March of last year?" and plaintiff responded, "[c]orrect." When plaintiff was provided the opportunity to "make a statement" later in the hearing, she said she spoke with someone at the Department on March 21 about TANF and again on August 23, 2021, after she submitted a separate TANF application.

¶ 20    In answering questions from the ALJ, Kellum said she believed that plaintiff's phone conversation with the Department about TANF did not occur during the March 22 interview because plaintiff had testified that, during the call, she was asked to send check stubs. However, Carter's case comments reflect that the Department already had her income information. Kellum testified that after plaintiff submitted a request for TANF on August 23, 2021, the Department interviewed her by phone as to that request on September 7.

¶ 21    The ALJ asked Kellum about PM 19-02-00, which relates to cash and medical determinations and includes discussions of the two processes used by the Department for reviewing benefit requests: "IES Phase Two Process" (IES) and "Legacy Process" (Legacy). The ALJ noted that, under the Legacy section, there is an instruction stating, "at a time of redetermination[,] review eligibility for other programs." Kellum replied that Legacy ended in September 2017 and was replaced by IES. However, she further testified that, when the Department switched to IES, only the process changed; there were no policy changes. Plaintiff's counsel asked: "So is it fair to say that the Department still will at the time of redetermination review eligibility for other programs?" Kellum responded "Yes" but provided an explanation.

When plaintiff received the 2021 redetermination notice, which indicated that it was only for SNAP and medical benefits, she also received form 4474, which described the other available programs. Plaintiff, as with any benefit participant, could have requested additional benefits. Further, the redetermination form, although submitted after the date provided in the 2021 redetermination notice, was received before the end of her then-certification period for SNAP benefits and not considered a new application.

¶ 22    On June 9, 2022, the Secretary issued the final administrative decision, which adopted the ALJ's findings and set forth the procedural history and the evidence from the hearing. In its analysis, the Secretary noted that there was no dispute that plaintiff submitted the redetermination form on March 19, 2021. The Secretary described the three issues at hand: (1) whether the Department was obligated to determine if plaintiff was eligible for TANF when plaintiff submitted the redetermination form, (2) whether it had to view the redetermination form as a new application, and (3) whether there was an underpayment of TANF assistance.

¶ 23    In reviewing the first issue, the Secretary rejected plaintiff's argument that the redetermination form fell under section 11-4 of the Public Aid Code, after concluding that the statutory language did not indicate that the section pertained to redeterminations. The Secretary similarly found that plaintiff had cited no provisions in the Public Aid Code or Administrative Code that supported her argument that redeterminations should be treated the same as section 11-4 applications. The Secretary noted that the provisions in the Administrative Code governing redetermination submissions contain no mention of determining eligibility for other programs. The Secretary therefore concluded that the Department was not obligated to review whether plaintiff was eligible for other programs, such as TANF, at the time it considered the redetermination form.

¶ 24     The Secretary found that "the Department is not bound by [policy manuals] without further support from the Public Aid or the Administrative code." The Secretary further explained that the Legacy part of PM 19-02-00, upon which plaintiff relied, only applied to redeterminations for cash and medical benefits, not SNAP. Further, because Legacy was phased out in 2017, the Legacy section of PM 19-02-00 could not have applied here.

¶ 25     Moving on to the second issue, the Secretary determined that, even though plaintiff submitted the redetermination form after the deadline listed in the February 2021 redetermination, that single fact did not transform the redetermination form into a new application. The Secretary also concluded that plaintiff's testimony that she verbally requested TANF during the March 22 interview was inconsistent and unsupported.

¶ 26     As to the last issue, the Secretary found that, because the Department was not obligated to consider whether plaintiff was eligible for TANF at the time of her redetermination for SNAP and medical benefits, any issue of underpayment of TANF assistance was moot.

¶ 27     Plaintiff filed a complaint for administrative review and a petition for *writ of certiorari* in the circuit court. Plaintiff argued that a redetermination submission should be treated like an application that requires the Department to consider whether the individual is eligible for all programs. Plaintiff also argued that the Secretary erred in rejecting her testimony that she made a verbal request for TANF during the March 22 interview. The Department argued, in part, that the relevant statutory provisions require the Department to consider eligibility for all assistance at the time of a new or an initial application, not with each redetermination.

¶ 28     The circuit court affirmed the Secretary's decision. Plaintiff timely appealed.

¶ 29     On appeal, plaintiff again argues that the Secretary erred in finding that the redetermination form did not require the Department to consider her eligibility for all assistance programs,

including TANF, and in crediting incompetent hearsay over plaintiff's testimony as to her oral request for TANF. Plaintiff asks this court to reverse the Secretary's decision and remand the case to the Department to determine plaintiff's eligibility for TANF from March 2021 through August 2021 and any underpayment.

¶ 30     We first address the Department's contention that the appeal is moot because plaintiff, during the pendency of this case, received the maximum number of TANF payments allowed under section 4-1.12 of the Public Aid Code (305 ILCS 5/4-1.12 (West 2022)) and therefore cannot obtain any relief from this appeal. Plaintiff disagrees and argues that it is not clear from the record that she has received the maximum amount of TANF payments and, even if she has, exceptions to this restriction would apply.

¶ 31     "An appeal is moot if no actual controversy exists or when events have occurred that make it impossible for the reviewing court to render effectual relief." *Commonwealth Edison Co. v. Illinois Commerce Comm'n*, 2016 IL 118129, ¶ 10. "The existence of an actual controversy is an essential requisite to appellate jurisdiction, and courts of review will generally not decide abstract, hypothetical, or moot questions." *In re Marriage of Nienhouse*, 355 Ill. App. 3d 146, 149 (2004).

¶ 32     The Public Aid Code imposes a 60-month limitation on adults receiving TANF assistance. 305 ILCS 5/4-1.12 (West 2022). However, the Department "may exempt" individuals from this 60-month limitation or "determine circumstances under which a month or months would not count towards the 60-month limitation." *Id.* The Administrative Code allows the Department to grant an exception under six circumstances and provides guidelines for determining that certain months would not count toward the 60-month limitation. 89 Ill. Adm. Code 112.1, 112.3 (2010). An individual must request an exception to the limitation in writing. *Id.* § 112.3(a).

¶ 33    In support of its mootness argument, the Department attached to its brief on appeal a September 10, 2024, "verification by certification" signed by Jill Outland, the interim associate director of the office of policy and program integrity at the Department. Outland reviewed the Department's records regarding plaintiff's benefits and verified that plaintiff has received 62 months of TANF payments, the last payment on December 5, 2023, and had not applied for an exception from the 60-month limitation.

¶ 34    Plaintiff's counsel, in the reply brief filed on November 4, 2024, and a status report filed on December 3, provided that on September 19, 2024, plaintiff submitted an application for TANF benefits (September 2024 application). The Department sent plaintiff a "Request for Exception" form, dated October 8, 2024, to seek cash assistance beyond the 60-month limitation. On October 25, 2024, the Department issued a notice of decision (October 2024 decision) denying plaintiff's September 2024 application for TANF due to her failure to provide necessary information. On November 26, 2024, plaintiff submitted the request for exception, which stated that she was "requesting TANF assistance beyond the 60-month lifetime limit because I believe I am (or another adult in my case is): unable to work at least 30 hours per week due to a medical condition; [and] unable to work at least 30 hours per week due to care of a related child under 18 or spouse due to their medical condition." On November 29, 2024, plaintiff administratively appealed the October 2024 decision. At the time that the status report was filed, the Department had not yet made a decision on plaintiff's request for exception, and plaintiff's administrative appeal from the October 2024 decision was still pending.

¶ 35    Assuming plaintiff has received the maximum number of TANF payments, there is uncertainty surrounding whether plaintiff would fit an exception or whether she would be entitled to relief on her claim that there was an underpayment of TANF assistance between March 2021

and August 2021. First, according to the Department, plaintiff has received 62 months of TANF payments, which is over the maximum allowed, indicating that the Department previously may have found exceptions applied or there were months that did not count toward the limitation. Second, the Department has not made a final ruling on plaintiff's request for exception, and her appeal from the September 2024 notice of decision is still pending. Lastly, it is unclear at this stage whether the 60-month limitation would apply retroactively and, if it did, whether plaintiff could assert and establish an exception to the months in question here. Therefore, we find that the record does not establish that this case is moot, and we will address the merits.

¶ 36    The Illinois Constitution provides that circuit courts have the power to review final administrative decisions only as provided by law. Ill. Const. 1970, art. VI, § 9; *Slepicka v. Illinois Department of Public Health*, 2014 IL 116927, ¶ 32. The Administrative Review Law (735 ILCS 5/3-101 *et seq.* (West 2022)) applies to and governs every action for judicial review of a final administrative decision where the statute creating or conferring power on the administrative agency expressly adopts its provisions. *Id.* § 3-102. When the statute conferring power on the administrative agency does not adopt the Administrative Review Law, a party may seek review through a common-law writ of *certiorari*. *Hanrahan v. Williams*, 174 Ill. 2d 268, 272 (1996).

¶ 37    Here, plaintiff is a recipient of medical benefits and was also seeking a redetermination of eligibility of her medical benefits, which are governed by article V of the Public Aid Code (305 ILCS 5/art. V (West 2022)). Plaintiff is also claiming that she was an "applicant" for TANF, which is governed by article IV of the Public Aid Code (305 ILCS 5/art. IV (West 2022)). The Public Aid Code expressly adopts the Administrative Review Law for final decisions by the Department on appeals by "applicants" or "recipients" issued under both articles IV and V. *Id.* § 11-8.7.

¶ 38    However, plaintiff's appeal also arises from the redetermination of her SNAP assistance. The Department's decisions regarding SNAP are issued under article XII of the Public Aid Code (*id.* § 12-4.13). The Public Aid Code did not expressly adopt the Administrative Review Law for final decisions under article XII. See *id.* § 11-8.7. Therefore, SNAP decisions are subject to review under a common-law writ of *certiorari*. *Smith v. Department of Public Aid*, 67 Ill. 2d 529, 541 (1977). Nonetheless, the standards of review under a common-law writ of *certiorari* and the Administrative Review Law are "essentially the same." *Outcom, Inc. v. Illinois Department of Transportation*, 233 Ill. 2d 324, 337 (2009).

¶ 39    In administrative cases, this court reviews the agency's final decision, not the determination of the circuit court. *Id.* "The proper standard of review in cases involving administrative review depends upon whether the question presented is one of fact, one of law, or a mixed question of fact and law." *Beggs v. Board of Education of Murphysboro Community Unit School District No. 186*, 2016 IL 120236, ¶ 50.

¶ 40    Plaintiff first argues that the Secretary erred in the interpretation of "application" in section 11-4 of the Public Aid Code (305 ILCS 5/11-4 (West 2022)) and sections 10.410 and 10.415 of title 89 of the Administrative Code (89 Ill. Adm. Code 10.410 (2020); 89 Ill. Adm. Code 10.415 (2001)) when concluding that the Department had no duty to evaluate plaintiff's eligibility for TANF benefits when she filed the redetermination form. The Department responds that an application seeking a redetermination of the participant's eligibility to continue with benefits is distinct from an application seeking new benefits and does not obligate the Department to consider eligibility for other benefits.

¶ 41    The parties' arguments require us to construe the language of the relevant statutory provisions, in particular, the language of section 11-4 of the Public Aid Code. Questions of

statutory interpretation are questions of law, to which we apply a *de novo* standard of review. *Cinkus v. Village of Stickney Municipal Officers Electoral Board*, 228 Ill. 2d 200, 211 (2008). An agency's decision on a question of law is not binding on a reviewing court; this "court's review is independent and not deferential." *Id.* at 210-11. Our supreme court has explained:

"The primary objective in construing a statute is to ascertain and give effect to the intention of the legislature. [Citation.] The most reliable indicator of legislative intent is the language of the statute, which must be given its plain and ordinary meaning. [Citation.] A statute is viewed as a whole; therefore words and phrases are construed in light of other relevant statutory provisions and not in isolation. [Citation.] A court may consider the reason for the law, the problems sought to be remedied, the purposes to be achieved, and the consequences of construing the statute one way or the other." *Chaudhary v. Department of Human Services*, 2023 IL 127712, ¶ 47.

¶ 42     When the statutory language is clear and unambiguous, it must be construed as written, without reading in exceptions, conditions, or limitations not expressed by the legislature. *In re Craig H.* 2022 IL 126256, ¶ 25. If a statute is ambiguous, meaning "it is capable of being understood by reasonably well-informed persons in two or more different ways" (*People ex rel. Birkett v. City of Chicago*, 202 Ill. 2d 36, 46 (2002)), we will give deference to an agency's reasonable interpretation of a statute that it is charged with enforcing (*Hadley v. Illinois Department of Corrections*, 224 Ill. 2d 365, 370-71 (2007)).

¶ 43     Section 11-4 of the Public Aid Code states in pertinent part that

"[a]n application for public assistance shall be deemed an application for all such benefits to which any person may be entitled except to the extent that the applicant expressly declines in writing to apply for particular benefits. The *** Department shall provide

- 14 -

information in writing about all benefits provided under this Code to any person seeking public assistance." 305 ILCS 5/11-4 (West 2022).

"Public aid" is defined as "Financial aid and all rehabilitative and other services provided under this Code ***." *Id.* § 2-2. The Public Aid Code does not define the term "application" but defines "applicant" as a "person who has applied for financial aid under any of the provisions of this Code." *Id.* § 2-8.

¶ 44    What plaintiff submitted here was the completed redetermination form seeking the continuation of her assistance. The Department issued the redetermination form to plaintiff as part of the 2021 redetermination notice informing her that her SNAP benefit period was ending and that she needed to complete the redetermination process if she wanted to continue to receive benefits. The redetermination form included plaintiff's name and address and had a series of questions relating to plaintiff's current situation. On the last page, the form had a "certification and consent to general release" requiring that plaintiff sign "[t]his *application*" and "swear or affirm, ***, the answers on this *application* are true and correct." (Emphases added.) On the first page, plaintiff was also informed that she "must have an interview with a caseworker to *reapply* for SNAP." (Emphasis added.) Further, on the verifications form, plaintiff was informed of the reporting requirements "[a]t this application" and notified that the Department would "use any information we get to determine eligibility for benefits and the amount of benefits provided for all programs." In addition to these two documents, the 2021 redetermination notice also included the guide, which "provid[ed] information in writing about *all benefits* provided under this Code" (emphasis added), which is consistent with the requirement of section 11-4 that the Department provide applicants a written list of its services.

- 15 -

¶ 45    When we view the plain language of section 11-4 of the Public Aid Code with the 2021 redetermination notice and the redetermination form, we conclude that the redetermination form was an application for public assistance and the Department was obligated to consider plaintiff's eligibility for all assistance programs including TANF. Because section 11-4 is not ambiguous, we give no deference to the Secretary's interpretation of the statute. *Board of Education of Springfield School District No. 186 v. Attorney General*, 2017 IL 120343, ¶ 23.

¶ 46    The Department argues that plaintiff's submission was not a "new" or "initial" application and therefore was not an application under section 11-4. We disagree. Section 11-4 does not include language that it pertains only to "new or "initial" applications and does not contain exclusions or limitations as to the type of application for public assistance to which it applies. We are not to "read[ ] into it exceptions, limitations, or conditions that the legislature did not express. *Lawler v. University of Chicago Medical Center*, 2017 IL 120745, ¶ 12.

¶ 47    Contrary to the Department's arguments on appeal, we find that our reading of section 11-4 is consistent with the regulatory framework that applies to the Department. Under the Administrative Code, "applicant" is defined as "[a]n individual requesting assistance by completion of a signed, written application," and "application" is defined as "[a] request for assistance by means of a completed, signed designated form. For SNAP purposes, only a name, address and signature are needed on the form." 89 Ill. Adm. Code 10.120 (2013). Section 10.410 provides that "[a]n application is a request for cash, medical or SNAP assistance on a Department *** form or a [Department] web application submitted electronically that has been completed to the best of the client's knowledge and ability." 89 Ill. Adm. Code 10.410(a) (2020). Section 10.415 provides that, "[u]pon a person's making application for public assistance at a local office, the local office shall consider that person's eligibility for all forms of public assistance ***, unless the

- 16 -

person has indicated in writing that he or she does not want to apply for certain programs." 89 Ill. Adm. Code 10.415 (2001).

¶ 48    Specific to SNAP applications, section 121.1 provides that an "application for [SNAP] benefits is a written or spoken request containing the client's name, address and signature" and that an "application is required for *initial* certification and *subsequent* certification"; "see Section 121.120." (Emphases added.) 89 Ill. Adm. Code 121.1(a), (b) (2014). Section 121.120 provides in part that a SNAP "[r]edetermination involves the completion of *an application*, an interview, a review of eligibility and cooperation in the verification of eligibility" and, "[i]n order to receive uninterrupted benefits, the household must *** file a timely *application*." (Emphases added.) 89 Ill. Adm. Code 121.120(a), (b)(1) (2015).

¶ 49    As discussed above, plaintiff completed, signed, and submitted the redetermination form, a Department-issued form, that is designated for use as part of the redetermination process. The 2021 redetermination notice identified the redetermination form as an application. Section 121.1 of the Administrative Code provides that an application is used for both initial and subsequent certifications of SNAP benefits and that an application is necessary for redetermination. By submitting the redetermination form and following the Department's procedures, plaintiff was requesting assistance. Further, the redetermination form, as discussed above, met and exceeded the criteria for an application under the general definition and the definition more specific to SNAP applications as provided by the Administrative Code.

¶ 50    Because the Secretary found the redetermination form was not subject to section 11-4, the Secretary did not reach the issue of whether there was an underpayment of TANF assistance to plaintiff on the ground of mootness. Our decision now requires the Department to decide whether plaintiff was eligible for TANF from March 2021 through August 2021 and was underpaid.

- 17 -

¶ 51 For the reasons stated above, we reverse the circuit court's judgment, which affirmed the final decision of the Department, and the Department's final decision. We remand the cause to the Department for further proceedings to determine plaintiff's eligibility for TANF from March 2021 through August 2021 and the amount of any underpayment. We do not express an opinion as to whether plaintiff was eligible for TANF or whether there was an underpayment. In light of our decision, we need not consider the other arguments raised on appeal.

¶ 52 Circuit court judgment reversed.

¶ 53 Department decision reversed.

¶ 54 Cause remanded to the Department with directions.

*Hampton v. Quintero*, 2025 IL App (1st) 232282

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 22-CH-6777; the Hon. Michael T. Mullen, Judge, presiding. |
| **Attorneys for Appellant:** | Benjamin P. Bennett and Kaaren Fehsenfeld, of Legal Aid Chicago, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Kwame Raoul, Attorney General, of Chicago (Jane Elinor Notz, Solicitor General, and Anna W. Gottlieb, Assistant Attorney General, of counsel), for appellees. |