2025 IL App (1st) 240561

First District
Third Division
May 7, 2025

No. 1-24-0561

BRENDA MOORE,

    Plaintiff-Appellant,

v.

THE DEPARTMENT OF HUMAN
SERVICES and GRACE B. HOU, Secretary of
Human Services,

    Defendants-Appellees.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Appeal from the Circuit Court
of Cook County.

No. 23 CH 6344

The Honorable
Neil H. Cohen,
Judge Presiding.

JUSTICE REYES delivered the judgment of the court, with opinion.
Presiding Justice Lampkin and Justice Martin concurred in the judgment and opinion.

**OPINION**

¶ 1     The instant administrative review appeal arises from the efforts of plaintiff Brenda Moore to obtain retroactive benefits from the Illinois Department of Human Services (IDHS)[1] as a result of the agency's alleged failure to evaluate her for certain public aid benefits in 1996. Plaintiff, who has been disabled since November 1996, began receiving federal supplemental security income (SSI) benefits at that time and, at the same time, also began receiving Medicaid benefits. In July 2022, plaintiff applied to receive financial assistance from IDHS under the Aid for the Aged, Blind or Disabled (AABD) program, and was approved. Plaintiff later also sought retroactive benefits under the AABD program, claiming that IDHS had failed to evaluate her eligibility for AABD cash benefits between November 1996 and June 2022, as

---

[1] While "Illinois" is not an official part of the agency's title (see 20 ILCS 5/5-15 (West 2022)), we include it in order to avoid confusion between the federal and state agencies involved.

required by state law. After an administrative hearing, plaintiff's request was denied by the Secretary of Human Services[2] (Secretary). Plaintiff filed a complaint for administrative review, and the circuit court of Cook County affirmed the Secretary's decision, finding that IDHS did not have an obligation to evaluate plaintiff's eligibility for AABD benefits in 1996. Plaintiff now appeals and, for the reasons set forth below, we reverse and remand.

¶ 2                                    BACKGROUND

¶ 3                            *Overview of Disability Benefits*

¶ 4        In order to properly understand the issues in the instant appeal, we begin with a brief overview of the various disability benefits that plaintiff received, under both federal and state law.[3]

¶ 5        Under federal law, individuals who are aged, blind, or disabled and who have sufficiently limited income or resources are entitled to SSI benefits. 42 U.S.C. § 1381a (1994). Similarly, the Illinois Public Aid Code provides for financial aid to individuals who have been determined to be aged, blind, or disabled as defined by the Social Security Administration (the AABD program). 305 ILCS 5/3-1 (West 1996); 89 Ill. Adm. Code 113.1, amended at 19 Ill. Reg. 15034 (eff. Oct. 17, 1995). The Public Aid Code specifically limits such aid to "persons who are receiving Supplemental Security Income (SSI) or who have been found ineligible for SSI on the basis of income." 305 ILCS 5/3-1 (West 1996). For individuals seeking AABD aid on the basis of disability, as in plaintiff's case, the determination of disability from the Social Security Administration for purposes of eligibility for SSI benefits is sufficient to establish

---

[2]Since the filing of plaintiff's complaint for administrative review, Dulce Quintero has succeeded Grace Hou as Secretary of Human Services and is participating in this appeal.

[3]As defendant alleges she was first entitled to these benefits in November 1996, we relate the law in effect at that time.

disability for purposes of AABD aid. 89 Ill. Adm. Code 113.50, amended at 19 Ill. Reg. 15034 (eff. Oct. 17, 1995).

¶ 6      Individuals who receive financial aid under the AABD program are similarly eligible to receive medical assistance (Medicaid)[4] (305 ILCS 5/5-2 (West 1996)) and may be eligible for food stamps under the federal supplemental nutrition assistance program (SNAP) (7 U.S.C. § 2014 (1994)). Prior to July 1, 1997, the Illinois Department of Public Aid was responsible for the administration of all of the above programs. See 305 ILCS 5/2-12 (West 1996). Beginning on July 1, 1997, the administration of the programs was split, with IDHS becoming the agency responsible for AABD financial assistance and SNAP benefits and the Department of Public Aid—renamed in 2007 as the Department of Healthcare and Family Services—being responsible for medical assistance. See 89 Ill. Adm. Code 101.30 (2013); 305 ILCS 5/2-12(2), (3) (West 1998); Pub. Act 95-331 (eff. Aug. 21, 2007).

¶ 7      To receive either medical or financial assistance, an individual must file an application in writing with the local IDHS office.[5] 305 ILCS 5/11-15(1) (West 1996). Under the Public Aid Code, an application for public assistance is deemed to be an application for all benefits to which an individual may be entitled, unless the applicant expressly declines in writing to apply for particular benefits. *Id.* § 11-4.

---

[4]Article V of the Public Aid Code is the statute governing Medicaid. *Khan v. Department of Healthcare & Family Services*, 2020 IL App (1st) 191212, ¶ 53; see (305 ILCS 5/art. V (1996)); see also *Gillmore v. Illinois Department of Human Services*, 218 Ill. 2d 302, 305-06 (2006) (explaining that states that participate in the federal Medicaid program design their own plans and set standards for eligibility and assistance).

[5]We note that, while medical assistance is now administered by the Department of Healthcare and Family Services, the Public Aid Code still requires an application for medical assistance to be filed with IDHS. See 305 ILCS 5/11-15(1) (West 2022).

¶ 8 *Plaintiff's Disability Benefits*

¶ 9 The evidence presented during plaintiff's administrative hearing established the following.

¶ 10 The Social Security Administration found plaintiff disabled on November 1, 1996, and plaintiff was entitled to SSI benefits as a result.

¶ 11 A "BEAM" report submitted by plaintiff indicated that she had been eligible to receive Medicaid benefits since November 1996.[6]

¶ 12 The Social Security Administration also found that plaintiff was entitled to hospital insurance and medical insurance through Medicare beginning in April 1999.[7] A printout from the IDHS "State Online Query" database similarly indicated that plaintiff's "Buy-In Start Date" for supplementary medical insurance benefits paid by IDHS on plaintiff's behalf was April 1999.

¶ 13 On July 7, 2022, plaintiff filed an application for AABD benefits, which was approved on August 10, 2022. After receiving a partial benefit for the month of August, plaintiff was awarded approximately $47 per month beginning on September 1, 2022.

---

[6]This document appears to be from a database operated by the Illinois Department of Aging's Community Care Program, which assists eligible seniors with services. See *Community Care Program (CCP)*, Ill. Dep't on Aging (2025), https://ilaging.illinois.gov/programs/ccp.html [https://perma.cc/9YJN-37CC]. Under that program, "BEAM" stands for "Benefits Eligibility Assistance Monitoring." See Ill. Dep't on Aging, *Community Care Program Acronyms*, https://webapps.illinois.gov/AGE/Dashboard/Dashboard/GetFile?hash= d308b5eaf43d317ae1c92019cdc8afa1b075b897cd9aec8b7a5421a15feddbd2 (last viewed Apr. 25, 2025) [https://perma.cc/529W-ZNV2]. Plaintiff's representative also referred to this document as a "MMIS" report. MMIS, the IDHS Recipient Medicaid Eligibility Information Inquiry System, provides medical coverage information for all IDHS clients. See *PM 22-08-07: Recipient Medical Eligibility Information Inquiry System (MMIS)*, Ill. Dep't of Hum. Servs. (2023) https://www.dhs.state.il.us/page.aspx?Item=18713 [https://perma.cc/4UC5-5BJT]. While the parties use the term "MMIS" in their briefs on appeal, we use the term "BEAM," which was the term used during the administrative hearing and in the Secretary's decision.

[7]An individual is entitled to Medicare hospital insurance benefits if they have been entitled to disability insurance benefits for at least 24 calendar months (42 U.S.C. § 426 (1994)) and is entitled to supplementary medical insurance benefits if they are entitled to hospital insurance benefits (*id.* § 1395o).

¶ 14                                *Appeal of AABD Benefits*

¶ 15        On December 22, 2022, plaintiff filed an administrative appeal with IDHS,[8] contending that IDHS failed to evaluate her for financial benefits under the AABD program when she was first approved for Medicaid benefits in November 1996. Instead, she only began receiving AABD aid when she affirmatively applied for such benefits in July 2022. Accordingly, plaintiff sought an evaluation of her eligibility for AABD benefits for the time period from November 1996 through August 2022, when she first began receiving AABD aid, and if found to be qualified for such aid, plaintiff sought to be paid the benefits she had not yet received.

¶ 16        The hearing on plaintiff's appeal was originally scheduled to be heard by an administrative law judge (ALJ) on January 19, 2023, and in preparation for that hearing, plaintiff's representative requested "a copy of the full case file, including copies of all original applications and all redetermination notices" from IDHS. The matter was continued to March 7, 2023, and plaintiff's representative again requested a copy of her full case file from IDHS. At the March 7, 2023, hearing, the IDHS representative indicated that the agency was still searching for plaintiff's original application but that documents prior to 2017 were "paper application[s]," making the search challenging. As a result, the matter was continued to April 4, 2023.

---

[8]Under the regulations promulgated pursuant to the Public Aid Code, an individual who applies for or receives financial or medical assistance has the right to appeal, *inter alia*, the failure to act on an application or the failure to make a decision or take appropriate action on any request made by a client. 89 Ill. Adm. Code 102.80(a)(2), (5), amended at 11 Ill. Reg. 14067 (eff. Aug. 10, 1987); see also 305 ILCS 5/11-8 (West 1996) (an applicant may appeal where an application is not acted on within 30 days after its filing). While appeals must generally be exercised within 60 days, this time limit "does not apply when the Department fails to send a required written notification, fails to take action on a specific request, or denies a request without informing the client." 89 Ill. Adm. Code 102.82(b) (1982).

¶ 17        An administrative hearing was ultimately held before an ALJ on April 4, 2023. Plaintiff was represented by a paralegal from a legal aid agency, while IDHS was represented by a casework manager. The two representatives were the sole participants in the hearing, and no witnesses testified. Plaintiff's representative presented the benefit verification letter from the Social Security Administration and the BEAM report and indicated that plaintiff attested that she had never expressly denied AABD aid. The attestation, which is included in the record on appeal, provided:

> "I have been disabled under Social Security rules since November 1996 and have been entitled to Medicare since April 1999. I never explicitly denied AABD Cash benefits in writing. To my knowledge, the Department of Human Services never made an AABD Cash eligibility determination for me."

Accordingly, plaintiff's representative contended that IDHS should have evaluated her for AABD benefits at the time she began receiving public aid in 1996. In response, the IDHS representative did not make any arguments as to the availability of AABD aid but indicated that its electronic recordkeeping system did not have any records prior to October 2017 and that the first application that was on file was a food stamp application from 2020. Upon questioning by the ALJ, the IDHS representative stated that, as of 2017, plaintiff was receiving medical assistance and food stamps. With respect to the agency's processing of public aid applications generally, the IDHS representative indicated that the general practice of IDHS was to proceed according to the client's preference and "[if] they say, no, you know, we just move forward and process with an application."[9]

---

[9]We note that plaintiff also raised a claim for Medicare Savings Program benefits, but that claim is not at issue on appeal, so we need not discuss the evidence related to that claim.

¶ 18    On June 5, 2023, the Secretary issued a final administrative decision, adopting the ALJ's findings of fact. Specifically, the ALJ's findings of fact included (1) that plaintiff was found disabled by the Social Security Administration and began receiving SSI benefits in November 1996, (2) that plaintiff "was receiving medical benefits since at least November 1996," (3) that plaintiff was receiving Medicare Savings Program benefits since April 1999, (4) that plaintiff applied for food stamps in February 2020, and (5) that plaintiff applied for AABD benefits in July 2022.

¶ 19    The Secretary found that IDHS did not have an obligation to evaluate plaintiff for AABD benefits beginning in November 1996. The Secretary found that

"[n]either [plaintiff] nor IDHS could definitively state or provide documentation of when [plaintiff] had initially applied for medical benefits and what type of application [plaintiff] filled out. Therefore, it is not known if [plaintiff] filed for medical benefits even prior to receiving SSI benefits in November of 1996. Even if she applied after November 1996, then she may have filled out a medical benefits application only."

The Secretary further found:

"The Department has no obligation to determine [plaintiff's] eligibility for AABD Cash benefits in November 1996 and ongoing, because there is no evidence presented that [plaintiff] completed an application for any additional benefits. It is not IDHS's job, nor is it automatic that everyone who receives SSI benefits is evaluated for AABD Cash benefits. A person must first apply for public aid benefits with IDHS. [Plaintiff] has not demonstrated that it is more likely than not that they applied for AABD Cash benefits prior to July 7, 2022; nor has [plaintiff] demonstrated that it is more likely than not that IDHS failed to act on a prior AABD Cash application. Thus, [plaintiff] is not

7

entitled to any AABD Cash benefits prior to the date of her application for these benefits on July 7, 2022."

¶ 20                                    *Administrative Review*

¶ 21       On July 10, 2023, defendant filed a complaint for administrative review in the circuit court of Cook County, seeking review of the Secretary's decision under the Administrative Review Law (735 ILCS 5/3-101 *et seq.* (West 2022)). On February 2, 2024, the circuit court entered an order affirming the Secretary's decision. This appeal follows.

¶ 22                                          ANALYSIS

¶ 23       On appeal, plaintiff contends that the Secretary erred in finding that IDHS did not have an obligation to evaluate plaintiff's eligibility for AABD benefits in 1996. Judicial review of the Secretary's decision is governed by the Administrative Review Law. 305 ILCS 5/11-8.7 (West 2022). In the case of an administrative review action, we review the decision of the administrative agency and not the decision of the circuit court. *Marconi v. Chicago Heights Police Pension Board*, 225 Ill. 2d 497, 531 (2006) (*per curiam*). Under the Administrative Review Law, actions to review a final administrative decision "shall extend to all questions of law and fact presented by the entire record before the court." 735 ILCS 5/3-110 (West 2022). Additionally, "[t]he findings and conclusions of the administrative agency on questions of fact shall be held to be prima facie true and correct." *Id.* The reviewing court is not to reweigh the evidence or make an independent determination of the facts. *Kouzoukas v. Retirement Board of the Policemen's Annuity & Benefit Fund of Chicago*, 234 Ill. 2d 446, 463 (2009).

¶ 24       The reviewing court will defer to the agency's findings of fact unless they are against the manifest weight of the evidence. *Slater v. Department of Children & Family Services*, 2011 IL App (1st) 102914, ¶ 30. A finding is against the manifest weight of the evidence "only if the

8

opposite conclusion is clearly evident." *Abrahamson v. Illinois Department of Professional Regulation*, 153 Ill. 2d 76, 88 (1992). The fact that an opposite conclusion is reasonable or that the reviewing court may have ruled differently does not justify reversal of the administrative agency; "[i]f the record contains evidence to support the agency's decision, it should be affirmed." *Id.*

¶ 25     An administrative agency's decision on a matter of law, by contrast, is reviewed *de novo*. *Marconi*, 225 Ill. 2d at 532. In a case involving the agency's interpretation of a statute that it is charged with administering, the agency's interpretation "is considered relevant but not binding on the court." *Branson v. Department of Revenue*, 168 Ill. 2d 247, 254 (1995). If the language of the statute is clear and unambiguous, the court must interpret the statute according to its terms without resorting to aids of construction. *Id.*

¶ 26     Finally, an administrative agency's decision on a mixed question of law and fact is reviewed for clear error. *Elementary School District 159 v. Schiller*, 221 Ill. 2d 130, 143 (2006). This standard of review is deferential to the agency's expertise in interpreting and applying the statutes that it administers. *Id.* Where the decision of an administrative agency presents a mixed question of law and fact, " 'the agency decision will be deemed clearly erroneous only where the reviewing court, on the entire record, is left with the definite and firm conviction that a mistake has been committed.' " (Internal quotation marks omitted.) *Id.* (quoting *Comprehensive Community Solutions, Inc. v. Rockford School District No. 205*, 216 Ill. 2d 455, 472 (2005)). Regardless of the standard of review applied, however, in all cases, the plaintiff bears the burden of proof, and relief will be denied if she fails to carry that burden. *Marconi*, 225 Ill. 2d at 532-33.

¶ 27    In this case, IDHS does not appear to challenge plaintiff's position that, if she applied for public benefits in 1996, section 11-4 of the Public Aid Code required that she be evaluated for all public benefits to which she may be entitled unless she expressly requested otherwise. See 305 ILCS 5/11-4 (West 1996). The question on appeal, then, turns on whether plaintiff established that she applied for such benefits.

¶ 28    Plaintiff contends that she has been eligible to receive Medicaid since November 1996, which is demonstrated by the BEAM report. IDHS does not appear to dispute this point, and the Secretary's decision found, by a preponderance of the evidence, that plaintiff "was receiving medical benefits since at least November 1996." IDHS, however, maintains that plaintiff failed to establish precisely when she first applied for benefits or that she applied for general—and not medical-specific—benefits so as to trigger IDHS's duty under section 11-4.

¶ 29    The challenge in this case is that, due to the passage of time, neither party has been able to provide plaintiff's original application for Medicaid benefits. Thus, the primary matter to be determined on appeal is the effect of such an absence. As plaintiff observes, the Secretary effectively held the missing application against plaintiff, finding that, in the absence of evidence that she had applied for public aid in 1996, there was no duty for IDHS to evaluate her for AABD benefits at that time. We, however, conclude otherwise.

¶ 30    First, as noted, the Secretary found that plaintiff "was receiving medical benefits since at least November 1996." To receive either medical or financial assistance, an individual must file an application in writing. 305 ILCS 5/11-15(1) (West 1996). Accordingly, if plaintiff was receiving medical benefits since at least November 1996, then she necessarily would have applied for such benefits at some point prior to November 1996. Thus, there can be no dispute that plaintiff filed an application for public aid by November 1996 at the latest.

¶ 31    To the extent that the Secretary found that "it is not known if [plaintiff] filed for medical benefits even prior to receiving SSI benefits in November of 1996," we find such speculation to be without merit. There is no indication that plaintiff was receiving medical benefits prior to November 1996, and IDHS did not contend that she was during the hearing before the ALJ. The first time that any theoretical pre-November 1996 application was mentioned at all in this case was in the Secretary's decision itself. An administrative agency should not engage in speculation; "[s]uch speculation 'is not a sound basis [for the agency's decision] *** and each case should be determined on the basis of the facts and record as presented.' " *Board of Education of Crete-Monee Community Unit School District 201-U v. Caparelli-Ruff*, 2024 IL App (3d) 230389, ¶ 55 (quoting *Wheeler v. County Board of School Trustees of Whiteside County*, 62 Ill. App. 2d 467, 476 (1965)). Indeed, all of the actual evidence in the record indicates that plaintiff's involvement with IDHS began in late 1996. The documentation provided by plaintiff demonstrated her eligibility for Medicaid in November 1996, and the casework manager who represented IDHS at the hearing indicated that plaintiff worked with the south suburban office from November 1996 until October 2022, at which point she transferred to the southeast office. By engaging in speculation as to the possibility of a pre-November 1996 application, the Secretary improperly denied plaintiff the opportunity to respond or to contest such an inference. See *id.*

¶ 32    Based on the evidence in the record, plaintiff established that she applied for medical benefits in 1996. The question, then, becomes whether she applied *only* for medical benefits so as to relieve IDHS of its duty to evaluate her for other types of public aid. It is this question that remains unanswered due to the absence of the application itself. The Secretary found that, since "there is no evidence presented that [plaintiff] completed an application for additional

benefits," IDHS had no obligation to determine plaintiff's eligibility for AABD financial aid in November 1996. In other words, the Secretary found that plaintiff was required to prove that her application encompassed all types of aid. We, however, find that the absence of the application cuts the other way—that, in the absence of evidence that the applicant expressly declined benefits, the application must be construed to encompass a request for all aid to which she may be entitled.

¶ 33    The Public Aid Code is intended to protect and promote the health and welfare of the residents of Illinois through its provisions, which aim to assist in the alleviation and prevention of poverty. 305 ILCS 5/1-1 (West 1996). As such, the statute authorizes financial aid and social welfare services for persons in need "and provides for the development, use and coordination of all resources in this State, governmental and private." *Id.* The provisions of the statute are therefore to be liberally construed to effectuate its objects and purposes. *Id.* § 1-5.

¶ 34    The treatment of applicants and recipients under the Public Aid Code is especially important, with the statute expressly providing that "[e]very person administering any provision of this Code shall conduct himself or herself with courtesy, consideration and respect toward all applicants and recipients and perform duties in such manner as to secure for every applicant and recipient the aid and services to which the person may be entitled." *Id.* § 11-2.

¶ 35    In recognition of the care shown to applicants, section 11-4 of the Public Aid Code provides that "[a]n application for public assistance shall be deemed an application for all such benefits to which any person may be entitled except to the extent that the applicant expressly declines in writing to apply for particular benefits." *Id.* § 11-4. Section 11-4 continues: "The Illinois Department [(IDHS)] shall determine the applicant's eligibility for cash assistance, medical assistance and food stamps unless the applicant expressly declines in writing to apply for

particular benefits." *Id.* The governmental authorities involved in administering the provisions of the statute are also required to assist applicants in properly completing their applications (*id.*), and we have reversed the denial of benefits in cases where the governmental assistance was inadequate, even if technically within the letter of the statute. See, *e.g.*, *Bennetto v. Department of Public Aid*, 194 Ill. App. 3d 1, 6 (1990); *Siemion v. Department of Public Aid*, 168 Ill. App. 3d 187, 195 (1988).

¶ 36    Additionally, it is long-standing law that, where a party claims that an action or individual falls within an exception to a statute, that party has the burden of establishing the applicability of the exception.[10] See, *e.g.*, *Schultz v. American National Bank & Trust Co.*, 40 Ill. App. 3d 800, 802 (1976) (defendant bank had the burden to plead the applicability of a statutory exception in action to cancel note for lack of consideration); *City of Chicago v. Westphalen*, 95 Ill. App. 2d 331, 338 (1968) (while the City had the burden of proving its complaint, the defendant had the burden of establishing building code exception); *City of Chicago v. Elmhurst National Bank*, 35 Ill. App. 2d 383, 388-89 (1962) (same); *People ex rel. Illinois Armory Board v. Kelly*, 369 Ill. 280, 283-84 (1938) (while plaintiffs alleged ownership of land, defendants had burden of establishing deed restriction).

¶ 37    In this case, section 11-4 of the Public Aid Code is a statute that sets forth IDHS's duties with respect to applicants for public aid. As such, in order to trigger those duties, plaintiff was required to establish that she had applied for public aid benefits. Once she did so, if IDHS took the position that it had no duty toward plaintiff since her application did not encompass all types of aid, then it seems only appropriate to place the burden of establishing that fact on

---

[10]While not applicable to the case at bar, we note that this general rule does not appear to apply where the exception is part of the "enacting clause" of the statute, in which case disproving the exception remains the burden of the plaintiff. See, *e.g.*, *People ex rel. Illinois Armory Board v. Kelly*, 369 Ill. 280, 283 (1938).

IDHS. This is especially true where we are to liberally construe the provisions of the Public Aid Code in order to effectuate its purpose of assisting those in need to obtain necessary governmental services. See 305 ILCS 5/1-5 (West 1996).

¶ 38    We note that this is not a case in which we are required to determine whether an applicant is *eligible* for benefits and was wrongfully denied such benefits—in such a case, the applicant bears the burden of establishing her eligibility. See *Chaudhary v. Department of Human Services*, 2023 IL 127712, ¶ 70 (default rule in administrative proceedings is that the party initiating the action carries the burden). Instead, as we have explained, the instant appeal asks to determine the scope of IDHS's *duty* in light of a specific statute that sets forth that duty. Given that IDHS is contending that it did not have a duty to evaluate plaintiff for additional aid, it is only reasonable that IDHS would be the party who is required to establish the applicability of the exception on which it relies. Thus, here, where the Secretary found that plaintiff was receiving public aid as of November 1996, it falls on IDHS to establish that section 11-4 was not applicable.

¶ 39    Such a result is especially appropriate here, where IDHS is the party with the greater access to documentation, including the applications for aid filed by members of the public. Our supreme court has previously addressed IDHS's access to information in the context of an individual's eligibility for benefits. See *id.* ¶¶ 87-88. While discussing the burden of proof applicable to proceedings in which IDHS has alleged an overpayment of benefits, the *Chaudhary* court noted that IDHS "obviously has superior access to the records it used to make [the] determination" as to overpayment. *Id.* ¶ 87. The supreme court further observed that IDHS "has a myriad of public resources that include access to the Illinois Department of Employment Security, Social Security Administration, United States Department of Labor,

and Internal Revenue Service records," sources of information that are unavailable to benefit recipients. *Id.* The supreme court also pointed to the fact that IDHS had expertise compared to the general population seeking benefits, "who by nature of the program are those with disabilities; who are elderly; or may have limited education, resources, access to representation, and English proficiency." *Id.* ¶ 88. Such expertise includes knowledge of "the legal framework of federal and state statutes and regulations and policies that govern the administrative hearing process." *Id.* The supreme court found that "[t]his imbalance in representation and advantage to [IDHS]" supported a conclusion that IDHS is the entity with access to relevant information. *Id.*

¶ 40       Furthermore, as relevant to the case at bar, IDHS is required by law to maintain records concerning benefit recipients. The regulations promulgated pursuant to the Public Aid Code require that "[a] case record shall be established for each applicant and maintained for each recipient." 89 Ill. Adm. Code 102.35(b), amended at 3 Ill. Reg., No. 11, at 39 (eff. Mar. 1, 1979). "The case record is a business record and shall constitute an official record of the Department concerning clients." 89 Ill. Adm. Code 102.35(a), amended at 3 Ill. Reg., No. 11, at 39 (eff. Mar. 1, 1979). Moreover, "[t]he case record shall indicate the basis for approval or denial of the application." 89 Ill. Adm. Code 102.35(c), amended at 3 Ill. Reg., No. 11, at 39 (eff. Mar. 1, 1979). This was the state of the law in 1996, and it remains the state of the law today.[11] In this case, plaintiff was indisputably a "recipient" under the Public Aid Code by November 1996, as the Secretary found that she was receiving medical assistance by that date. As such, IDHS was required by law to maintain a case record, and we cannot find that its

---

[11]The regulation now appears in section 10.235 of title 89 of the Illinois Administrative Code. See 89 Ill. Adm. Code 10.235 (2000).

15

failure to abide by its responsibilities should in any way be used to penalize plaintiff with respect to establishing IDHS's duties towards her.

¶ 41    We note that, in her decision, the Secretary cited internal IDHS policy documents concerning the storage of "inactive cases and denied cases." There are, however, several problems with the Secretary's reliance on these policy documents. First, it is unclear whether these documents have any legal effect with respect to the agency's duties. See *Slater*, 2011 IL App (1st) 102914, ¶ 35 (declining to adopt standard for finding neglect that was contained only in agency's internal procedures, as "this standard is not contained in the [applicable statute] or in the regulations promulgated pursuant to" the statute). Indeed, a different division of this court recently issued a decision concerning the interpretation of the Public Aid Code where the Secretary took the *opposite* position than she did in this case, finding that " 'the Department is not bound by [policy manuals] without further support from the Public Aid [Code] or the Administrative [C]ode.' " *Hampton v. Quintero*, 2025 IL App (1st) 232282, ¶ 24. More problematically, the Secretary's decision fails to recognize that plaintiff's case was not an "inactive case[ ]" or a "denied case[ ]." Plaintiff's case was an *active* case—as the Secretary found, plaintiff "was receiving medical benefits since at least November 1996." Thus, even if the policy manuals may be used to guide the interpretation of the agency's duties, the provisions cited by the Secretary are wholly inapplicable to plaintiff's case.

¶ 42    In sum, section 11-4 of the Public Aid Code sets forth the duties that IDHS owes to applicants of public aid. Under that statute, the default position is that IDHS is required to evaluate applicants for all types of public aid for which they may be eligible. If, however, the applicant expressly declines to be considered for additional benefits, IDHS is not required to evaluate her for such benefits and may process the application with respect to only the specific

16

benefits sought. In this case, plaintiff has established that she applied for public aid benefits in November 1996. Thus, the default position is that IDHS was required to evaluate her for all other types of aid for which she may be eligible. The only evidence in this case as to whether plaintiff expressly declined to be considered for additional benefits was the casework manager's statement that the general practice of IDHS was to proceed according to the client's preference and "[if] they say, no, you know, we just move forward and process with an application." As this is merely a statement as to the agency's general practice and not specific to plaintiff's case, there is thus no evidence in the record that plaintiff expressly declined to be considered for additional benefits. Consequently, the default rule remains applicable, and IDHS was required to evaluate her for AABD aid. Accordingly, the Secretary erred in finding that IDHS owed plaintiff no duty to evaluate her for such aid.

¶ 43    We note that this result does not automatically entitle plaintiff to AABD benefits dating from November 1996. As she recognizes in her brief, our decision simply means that IDHS was required to *evaluate* her for AABD benefits beginning in November 1996. Individuals must satisfy certain eligibility conditions in order to be eligible for financial assistance under the AABD program. See 305 ILCS 5/3-1 (West 1996). Additionally, the amount of aid received depends on a number of factors. See *id.* § 3-5. Accordingly, on remand, IDHS is required to evaluate plaintiff for her eligibility for AABD benefits from November 1996 through August 2022—when she first began receiving such benefits—and, if plaintiff is determined to be eligible for financial assistance, IDHS must then provide her with the benefits to which she is entitled.

¶ 44                                    CONCLUSION

¶ 45        For the reasons set forth above, the Secretary's decision is reversed. Where plaintiff applied

for public assistance in November 1996 and did not expressly decline to be considered for

additional benefits, section 11-4 of the Public Aid Code required IDHS to evaluate her for

financial assistance under the AABD program. Accordingly, IDHS must evaluate plaintiff for

such benefits from November 1996 through August 2022, and if she is found to be eligible for

financial assistance under the AABD program, IDHS must provide her with the benefits to

which she is entitled.

¶ 46        Reversed and remanded with directions.

---

*Moore v. Department of Human Services*, 2025 IL App (1st) 240561

---

| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 23-CH-6344; the Hon. Neil H. Cohen, Judge, presiding. |
|---|---|

---

| **Attorneys for Appellant:** | Benjamin P. Bennett and Daniel Lindsey, of Legal Aid Chicago, of Chicago, for appellant. |
|---|---|

---

| **Attorneys for Appellee:** | Kwame Raoul, Attorney General, of Chicago (Jane Elinor Notz, Solicitor General, and Alexandrina Shrove, Assistant Attorney General, of counsel), for appellees. |
|---|---|